[No. C000142. Third Dist. July 28, 1988.]

THE PEOPLE ex rel. RICHARD W. EICHENBERGER, as District Attorney, etc., Plaintiff and Respondent, v.
STOCKTON PREGNANCY CONTROL MEDICAL CLINIC, INC., et al., Defendants and Appellants.

226

228

**COUNSEL**

Sanguinette, Willett & Seligman and Howard L. Seligman for Defendants and Appellants.

Margaret C. Crosby, Alan L. Schlosser and Abigail English as Amici Curiae on behalf of Defendants and Appellants.

Richard W. Eichenberger, District Attorney, Stephen E. Taylor, Deputy District Attorney, John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, W. Scott Thorpe, Janet G. Bangle and James Ching, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—Defendants Stockton Pregnancy Control Medical Clinic, Inc. (Clinic), Kenneth W. Shunk, M.D., Christopher R. Mills, M.D., and Annette Beck, R.N., appeal from an order granting a preliminary injunction. Clinic was enjoined from violating the Child Abuse and Neglect Reporting Act (Pen. Code, § 11164 et seq., hereafter Act) by failing to report, as child abuse, instances where minor patients under the age of 14 years are diagnosed as being pregnant, as having a sexually transmitted disease, or as suffering from complications of an abortion. (Further statutory references

are to the Penal Code unless otherwise indicated.) Clinic contends the injunction is overbroad. Clinic asserts the Act does not require the reporting of voluntary, consensual sexual conduct of minors. Clinic and amicus curiae contend the reporting law would substantially infringe the affected minors' constitutional rights to privacy if the law were construed to require reporting of the minors' consensual sexual activity.

We conclude the Act does not currently require the reporting of voluntary sexual conduct between minors under age 14 where both are of a similar age. The injunction is therefore overbroad.

However, we also conclude that reasonable suspicions of voluntary sexual conduct between a minor under age 14 and a person of disparate age constituting a violation of section 288, subdivision (a), must be reported. We conclude such reporting to a child protective agency serves a compelling state interest and therefore does not violate the state or federal constitutional privacy rights of affected minors. We also conclude that the retention of substantiated reports of child abuse by the Department of Justice also serves a compelling state interest and therefore does not violate affected minors' rights to informational privacy under our state Constitution.

## FACTS AND PROCEDURAL BACKGROUND

In November of 1984, minor V.R., age 13 years, began a voluntary sexual relationship with her 21-year-old boyfriend, J.C. On January 23, 1985, Dr. L. diagnosed V.R. as being pregnant. Dr. L. referred V.R. to Clinic for treatment. Clinic performed the requested medical care.

Clinic did not report V.R.'s pregnancy to any child protective agency.

On February 21, 1985, V.R.'s pregnancy was called to the attention of the San Joaquin County Sheriff-Coroner's office. V.R.'s mother reported the pregnancy to the sheriff and demanded that V.R.'s boyfriend be "brought to justice."

Following an investigation, the San Joaquin County District Attorney filed a civil complaint against Clinic alleging that its failure to report V.R.'s pregnancy to a child protective agency violated section 11166. The district attorney sought civil penalties and a permanent injunction enjoining Clinic from violating section 11166.

Following a hearing, the trial court issued a preliminary injunction enjoining Clinic from violating section 11166. Evidently relying on a 1984

opinion of the Attorney General (67 Ops.Cal.Atty.Gen. 235 (1984)), the trial court enjoined Clinic from "Violating Section 11166 of the Penal Code by failing in the future to report as child abuse, instances where minors under the age of fourteen (14) are diagnosed as being pregnant, as having a sexually transmitted disease, or as suffering from complications of abortion."

Clinic appeals. (Code Civ. Proc., § 904.1, subd. (f).)

## DISCUSSION

## I

### *Reporting Duties Under the Act*

Clinic contends the Act does not require the reporting of a minor's voluntary sexual conduct regardless of the age of the minor or the minor's partner.

In *Planned Parenthood Affiliates* v. *Van de Kamp* (1986) 181 Cal.App.3d 245 [226 Cal.Rptr. 361], the court summarized reporting duties under the Act. (Pp. 256-260.) We shall not duplicate that discussion here. Rather, we shall assign *Planned Parenthood* as required reading for this opinion.

In a nutshell, the reporting at issue here is mandated by section 11166 which provides in pertinent part, "(a) . . . any . . . health practitioner, . . . who has knowledge of or observes a child in his or her professional capacity . . . whom he or she knows or reasonably suspects has been the victim of child abuse shall report the known or suspected instance of child abuse to a child protective agency . . . ."

Section 11165.6 defines "child abuse" as, among other things, "the sexual abuse of a child . . . ." (Stats. 1987, ch. 1459, § 13.)

The term "sexual abuse" is defined in section 11165.1, which provides in pertinent part: " 'sexual abuse' means sexual assault or sexual exploitation as defined by the following: [¶] (a) 'Sexual assault' means conduct in violation of . . . subdivision (a) . . . of Section 288 (lewd or lascivious acts upon a child under 14 years of age), . . ."

Clinic contends the voluntary sexual conduct of minors is exempt from reporting pursuant to *Planned Parenthood, supra,* 181 Cal.App.3d 245. There, the court held that the Act did not require the reporting of voluntary

sexual conduct *between minors under age 14 where both were of a similar age. (Id.,* at pp. 255, 256, 276, fn. 14, 280, fn. 16, 282.)[1]

Whether we would have arrived at this conclusion in 1986, as did the *Planned Parenthood* court, is now immaterial. We are satisfied that the Act does not *currently* require the reporting of voluntary sexual conduct between minors under age 14 where both are of a similar age. During 1987, the Legislature amended the Act in various respects effective January 1, 1988. (Stats. 1987, ch. 1459.) These amendments are germane to our case for two reasons. First, even though the Legislature considered and enacted the amendments after the opinion in *Planned Parenthood* became final,[2] the amendments reflect no disavowal of *Planned Parenthood's* interpretation of the Act. ■ The Legislature is deemed to have approved the interpretation, because " ' "Where a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it." ' (*Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345, 353 [211 Cal.Rptr. 742, 696 P.2d 134], quoting *People* v. *Hallner* (1954) 43 Cal.2d 715, 719 [277 P.2d 393].)" (*In re Michael G.* (1988) 44 Cal.3d 283, 292 [243 Cal.Rptr. 224, 747 P.2d 1152]; see *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 734-735 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161], cert. den. (1982) 459 U.S. 858 [74 L.Ed.2d 111, 103 S.Ct. 129]; *Elrod* v. *Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 698 [241 Cal.Rptr. 108]; *In re Cindy B.* (1987) 192 Cal.App.3d 771, 777-778 [237 Cal.Rptr. 677].) ■ The 1987 amendments are also relevant because an order granting or denying an injunction is to be evaluated in light of the law which is current at the time of review. (*Hays* v. *Wood* (1979) 25 Cal.3d 772, 782 [160 Cal.Rptr. 102, 603 P.2d 19]; *White* v. *Davis* (1975) 13 Cal.3d 757, 773, fn. 8 [120 Cal.Rptr. 94, 533 P.2d 222], *Sullivan* v. *Fox* (1987) 189 Cal.App.3d 673, 683 [235 Cal.Rptr. 5].)

■ However, contrary to Clinic's argument, the Act as construed by *Planned Parenthood* does not exempt all voluntary sexual conduct of minors under age 14 from reporting. The *Planned Parenthood* court emphasized, "We . . . do not decide the question of whether the reporting law applies to the de facto voluntary conduct of a minor under 14 whose partner

---

[1] Various statements of and limitations upon the *Planned Parenthood* holding are found at the cited pages and in the cited footnotes. We believe we have accurately stated the holding.

[2] The opinion in *Planned Parenthood* was filed on May 21, 1986, and became final 30 days later. (Cal. Rules of Court, rule 24(a).) The amendments were proposed by Senate Bill No. 1219, which was introduced in the Senate on March 5, 1987. (Sen. J. (Feb. 4, 1988) p. 729 (1987-1988 Reg. Sess.).) The bill ultimately passed both houses of the Legislature on September 11, 1987, and was approved by the Governor and chaptered as Chapter 1459 on September 30, 1987. (*Ibid.*)

*is* subject to criminal liability under section 288: the minor over 14 or the adult." (*Planned Parenthood, supra,* 181 Cal.App.3d at p. 276, fn. 14; see also *id.,* at p. 280, fn. 16.) In practical effect, the Act, as construed in *Planned Parenthood,* exempts from reporting as "child abuse" the voluntary sexual conduct of sexually mature boyfriends and girlfriends and the conduct of younger children of similar ages who voluntarily play doctor or otherwise engage in sexual experimentation. (*Id.,* at p. 276, fn. 14.)

Clinic's claim that *all* voluntary conduct of minors under age 14 is exempt from reporting cannot be reconciled with the plain command of subdivision (a) of section 11165.1, which defines as a "sexual assault" conduct in violation of subdivision (a) of section 288.[3]

■ In enacting section 11165.1, the Legislature is presumed to know the meaning given statutes by the courts. (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 897 [231 Cal.Rptr. 213, 726 P.2d 1288].) Consequently, the Legislature is presumed to know that, "It is settled that consent of the child is no defense to a charged violation of [section 288,] subdivision (a). (See *People* v. *Toliver* (1969) 270 Cal.App.2d 492, 496 [75 Cal.Rptr. 819]; *People* v. *Showers* (1949) 90 Cal.App.2d 248, 253 [202 P.2d 814]; 1 Witkin, Cal. Crimes (1st ed. 1963) Crimes Against Decency and Morals, § 564, p. 498; CALJIC No. 10.30 (1980 rev.).) ■ The prohibition on consent to a violation of [section 288,] subdivision (a) is grounded in salutary judicially created public policy 'for protection of infants or children as to whom persons commit lewd and lascivious acts at their peril.' (*People* v. *Toliver, supra,* 270 Cal.App.2d at p. 496.) The law simply outlaws sexual conduct with children under the age of 14 under all circumstances." (*People* v. *Cicero* (1984) 157 Cal.App.3d 465, 482 [204 Cal.Rptr. 582]; see *People* v. *Olsen* (1984) 36 Cal.3d 638, 644-645 [205 Cal.Rptr. 492, 685 P.2d 52].) ■ The Legislature is also presumed to know that subdivision (a) of section 288, which places criminal responsibility on "any person" for commission of a lewd act (see fn. 3, *ante*), has been applied to offender minors over age 14 who have committed lewd acts with minors under age 14. (See *In re Leonard M.* (1978) 85 Cal.App.3d 887 [149 Cal.Rptr. 791] [actor 16, victim 5]; *In re J.D.W.B.* (1970) 8 Cal.App.3d 103 [87 Cal.Rptr. 178] [actor 15, victim 5]; see also *In re James P.* (1981) 115 Cal.App.3d 681 [171 Cal.Rptr. 466]; see generally *Planned Parenthood, supra,* 181 Cal.App.3d at pp. 274-275.)

---

[3] Section 288, subdivision (a) provides: "Any person who shall willfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part of member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six, or eight years."

Clinic contends the reference in section 11165.1 to section 288 is "illustrative" only. However, the structure of section 11165.1 refutes the argument. The reference to section 288 appears in subdivision (a) of section 11165.1, while illustrations of included conduct are set forth in subdivision (b).[4] Subdivision (b)(4) of section 11165.1 defines conduct constituting a classic violation of subdivision (a) of section 288. We therefore have no doubt that the Legislature intended that violations of section 288, subdivision (a) should be reported under the Act except for any such violations as are exempt from reporting under *Planned Parenthood*.

Clinic urges us to construe the Act so as to require reporting only child abuse that is "of a serious nature" in accordance with the Legislature's asserted intent.

Although we think sexual intercourse between a 21-year-old adult and a minor under 14 is a felony "of a serious nature," our view of its severity is wholly beside the point. ■ The intentions of the Legislature are primarily known by examining the language of the statute in question. (*In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 739 [199 Cal Rptr. 697].) We must give effect to statutes according to the ordinary import of the language used. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) ■ Here, the Legislature has defined as sexual abuse (subject to reporting) the commission of a lewd or lascivious act upon a child under age 14 in violation of subdivision (a) of section 288.

---

[4] Section 11165.1 provides in pertinent part: "As used in this article, 'sexual abuse' means sexual assault or sexual exploitation as defined by the following: [¶] (a) 'Sexual assault' means conduct in violation of one or more of the following sections: Section 261 (rape), 264.1 (rape in concert), 285 (incest), 286 (sodomy), subdivision (a) or (b) of Section 288 (lewd or lascivious acts upon a child under 14 years of age), 288a (oral copulation), 289 (penetration of a genital or anal opening by a foreign object), or 647a (child molestation).

"(b) Conduct described as 'sexual assault' includes, but is not limited to, all of the following: [¶] (1) Any penetration, however slight, of the vagina or anal opening of one person by the penis of another person, whether or not there is the emission of semen.

"(2) Any sexual contact between the genitals or anal opening of one person and the mouth or tongue of another person.

"(3) Any intrusion by one person into the genitals or anal opening of another person, including the use of any object for this purpose, except that, it does not include acts performed for a valid medical purpose.

"(4) The intentional touching of the genitals or intimate parts (including the breasts, genital area, groin, inner thighs, and buttocks) or the clothing covering them, of a child, or of the perpetrator by a child, for purposes of sexual arousal or gratification, except that, it does not include acts which may reasonably be construed to be normal caretaker responsibilities; interactions with, or demonstrations of affection for, the child; or acts performed for a valid medical purpose.

"(5) The intentional masturbation of the perpetrator's genitals in the presence of a child."

(§ 11165.1, subd. (a), 11166, subd. (a).) We perceive no principled basis upon which to disregard the plain command of the Act that conduct in violation of section 288, subdivision (a) should be reported. If the Legislature wishes to exempt all voluntary sexual conduct of minors from reporting, it may simply amend the Act to say so. It has not yet done so. Needless to say, this court has no authority to rewrite the Act. (See *Mills* v. *Superior Court* (1986) 42 Cal.3d 951, 957 [232 Cal.Rptr. 141, 728 P.2d 211].)

Clinic contends a 1987 amendment of the Act has accomplished the result it seeks. Clinic points to the amendment of section 11166, subdivision (a), providing, "For the purpose of this article, the pregnancy of a minor does not, in and of itself, constitute the basis of reasonable suspicion of sexual abuse." (Stats. 1987, ch. 1459, § 20.)

We cannot reasonably construe this amendment to exempt all voluntary sexual conduct by minors under age 14 from reporting.[5] That result would effectively read subdivision (a) of section 288 out of the Act. However, our obligation is to construe the Act so as to harmonize its various provisions, if possible; a construction making some words surplusage is to be avoided. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379 [241 Cal.Rptr. 67, 743 P.2d 1323].) The 1987 amendment of subdivision (a) of section 11166 says an inference of sexual abuse cannot be drawn merely from the pregnancy of a minor. The amendment does not exempt from reporting under the Act a situation where the pregnancy of a minor, *when combined with additional information,* presents a reasonable suspicion that a reportable violation of subdivision (a) of section 288 has occurred. Thus, for example, the amendment does not exempt from reporting the pregnancy at issue here, which resulted from sexual relations between a minor under age 14 and a 21-year-old adult.

---

[5] We are also aware of the enactment in 1987 of section 11165.6, containing the following italicized language: "As used in this article, 'child abuse' means a physical injury which is inflicted by other than accidental means on a child by another person. 'Child abuse' also means the sexual abuse of a child or any act or omission proscribed by Section 273a (willful cruelty or unjustifiable punishment of a child) or 273d (unlawful corporal punishment or injury). 'Child abuse' also means the neglect of a child or abuse in out-of-home care, as defined in this article. *'Child' abuse does not mean a mutual affray between minors.*" (Stats. 1987, ch. 1459, § 13.)

Clinic correctly makes no contention that this language exempts consensual sexual conduct of minors from reporting. An "affray" is "a tumultuous assault: a violent engagement or action: FRAY, BRAWL, QUARREL; . . . the fighting of two or more persons in a public place so as to frighten the others, . . ." (Webster's New Internat. Dict. (3d ed. 1981) p. 36.) The statutory exemption for "a mutual affray between minors" is intended to exempt a fight between minors from being reported as physical child abuse. It cannot reasonably be read to exempt consensual sexual conduct.

Clinic and amicus assert that if the Act requires the reporting of voluntary sexual conduct by minors under age 14 it cannot be harmonized with other statutes allowing minors to consent to medical treatment and limiting the disclosure of a minor's medical records. The *Planned Parenthood* court apparently found the argument persuasive: "Civil Code section 34.5 gives unmarried otherwise unemancipated minors of any age the right to give independent consent to 'hospital, medical and surgical care related to the prevention or treatment of pregnancy.' Other statutes give similar rights of consent to minors of varying ages: section 34.7 (minors age 12 and over, right to consent to treatment for sexually transmitted diseases); section 34.8 (minors age 12 and over, right to consent to treatment for rape); section 34.9 (minors of any age, right to consent to treatment for sexual assault); section 34.10 (age 12 and over, right to consent to treatment for drug/alcohol abuse); section 25.9 (age 12 and over, right to consent to mental health counseling).

"In addition to the right of consent, the Legislature has provided a privilege of medical record confidentiality personal to the minor. Civil Code section 56 et seq., which governs disclosure of medical information with the appropriate authorization, provides that only the minor may consent to disclosure of records of treatment to which the minor consented. (See Civ. Code, § 56.11, subd. (c)(2); see also Health & Saf. Code, § 25252, subd. (a) [providing that only the minor, not the minor's representative—i.e., parent—may have access to medical records for treatment to which the minor may lawfully consent].)

"The Attorney General's interpretation of the law cannot be harmonized with the Legislature's comprehensive scheme to medically emancipate minors by enabling them to consent to reproductive health care without the involvement of the parent. By medically emancipating minors, the statutes, particularly Civil Code section 34.5, seem to presuppose the ability to consent to sexual activity. The minor seeking reproductive health care under Civil Code section 34.5 has the right to independently consent to the treatment and keep its records from the sight of the parent.

"In *Ballard* v. *Anderson, supra,* 4 Cal.3d 873, the Supreme Court interpreted Civil Code section 34.5, and held that the statutory right to reproductive health care could not be denied those under a certain age. 'The age of fertility provides the practical minimum age requirement' under the statute, with the additional limitation that the minor must be of sufficient maturity to give informed consent to any medical treatment procedure, including therapeutic abortion. (*Id.,* at pp. 882-883.) We must presume the Legislature was aware of *Ballard* when it enacted the child abuse reporting

law; the failure of the reporting law to expressly speak to the subject of consensual sex of minors indicates a lack of intent to include such conduct within the ambit of reportable abuse." (*Planned Parenthood*, supra, 181 Cal.App.3d at pp. 269-270.)

The scope of this discussion in *Planned Parenthood* is unclear. It appears to suggest that the voluntary sexual conduct of a minor under age 14 is exempt from reporting under the Act regardless of the age of the minor's partner. At the same time, as we have noted, the *Planned Parenthood* court made clear that its holding was limited to conduct between minors of a similar age both of whom were under age 14. (*Id.*, at pp. 255, 276, fn. 14, 280, fn. 16, 282.) To the extent *Planned Parenthood* suggests in dictum the Act does not require reporting of conduct constituting a reasonable suspicion of a violation of section 288, subdivision (a) by a person 14 or older— even an adult—we respectfully must disagree with it. We perceive no obstruction to this reporting in the medical emancipation statutes cited by Clinic and discussed in *Planned Parenthood*.

With respect to statutes authorizing minors to consent to medical treatment (Civ. Code, §§ 25.9, 34.5, 34.7, 34.8, 34.9, 34.10) there is simply no conflict with the Act, since the Act does not limit the ability of a minor to consent to treatment but rather requires a report of suspected abuse to a child protective agency. (§ 11166.) The report is confidential and may be released only as provided by law. (§ 11167.5.)

■ Civil Code section 56.11, subdivision (c)(2), impliedly requires a minor to authorize release of medical information where the minor lawfully consented to the medical services. (See also Health & Saf. Code, §§ 25252, subd. (a), 25253, subd. (a)(1).) Even assuming the information required by the section 11166 report constitutes the de facto disclosure of medical information, we think the Act unquestionably calls for disclosure where there is a reasonable suspicion child abuse has occurred. (§ 11166, subd. (a).) Thus, to the extent there may be a conflict between section 11166 and Civil Code section 56.11, subdivision (c)(2), section 11166 must prevail on the ground that it is the more specific statute (see *Young* v. *Haines* (1986) 41 Cal.3d 883, 897 [226 Cal.Rptr. 547, 718 P.2d 909]), prescribing the disclosure of information only where there is a reasonable suspicion child abuse has occurred.

Clinic and amicus argue that the Legislature intended to exempt all voluntary sexual activity, even that between minors and adults, from reporting under the Act because the Legislature deleted the reporting of unlawful sexual intercourse (§ 261.5) in 1981. (Stats. 1981, ch. 29, § 2.) We cannot

agree. When the Legislature deleted section 261.5 from the Act in 1981, it left section 288, subdivision (a) in place. ■ When a statute is amended by the Legislature in certain respects, the failure to amend the statute in other respects indicates an intention to leave the law unchanged in those respects. (*People* v. *Olsen, supra,* 36 Cal.3d at p. 647, fn. 19; *People* v. *Black* (1982) 32 Cal.3d 1, 9 [184 Cal.Rptr. 454, 648 P.2d 104]; *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 65 [81 Cal.Rptr. 465, 460 P.2d 137].) By its 1981 amendment of the statute, the Legislature is therefore presumed to have intended that the reporting of violations of subdivision (a) of section 288 should continue. Moreover, such a presumed intent has a plausible explanation. Section 261.5 outlaws intercourse with a female under age 18, while subdivision (a) of section 288 outlaws lewd conduct with children under age 14. The Legislature could rationally decide that conduct involving children under age 14 should remain subject to reporting while conduct involving older females should not be reported.

■ We hold that the Act does not currently require the reporting of voluntary sexual conduct between minors under age 14, both of whom are of a similar age. However, the Act requires the reporting of sexual conduct between a minor under age 14 and a person of disparate age, where the conduct is reasonably suspected to constitute a violation of subdivision (a) of section 288. (§§ 11165.1, subd. (a), 11165.6, 11166, subd. (a).)

The injunction issued by the trial court requires a report wherever a minor under age 14 is diagnosed as being pregnant, as having a sexually transmitted disease, or as suffering from complications of abortion. The injunction is apparently premised on the inference that a minor who is pregnant, or who has some other sexually caused medical condition has been the victim of a sexual assault. However, under the current version of the Act, the inference is expressly precluded to the extent it is based solely on pregnancy. (§ 11166, subd. (a).) Moreover the inference is not logically warranted to the extent a medical condition has been caused by voluntary sexual conduct between minors under age 14, both of whom are of a similar age.

We do not suggest that the presence of a sexually transmitted disease, in and of itself, necessarily precludes a duty to report. ■ The Act makes clear that professionals subject to the Act must evaluate facts known to them in light of their training and experience to determine whether they have an objectively reasonable suspicion of child abuse. (§ 11166, subd. (a); *Planned Parenthood, supra,* 181 Cal.App.3d at p. 259.)[6] However, nothing

---

[6]Subdivision (a) of section 11166 provides in pertinent part, " '[R]easonable suspicion' means that it is objectively reasonable for a person to entertain such a suspicion, based upon

in the Act requires professionals such as health practitioners to obtain information they would not ordinarily obtain in the course of providing care or treatment. Thus, the duty to report must be premised on information obtained by the health practitioner in the ordinary course of providing care and treatment according to standards prevailing in the medical profession.[7] Whether this information creates a reasonable suspicion of reportable child abuse will depend in many instances on application of the health practitioner's training and experience, as the Act expressly directs. It may well be that some sexually transmitted diseases are so commonly transmitted by those over age 14 that the presence of such a disease in a minor under age 14 would, in the absence of any other information, trigger a reasonable suspicion of child abuse. But whether this is so is a matter best left to the medical profession in the first instance.

■ In its present form the injunction requires a report in every case where Clinic encounters a minor under age 14 with a sexually transmitted disease or who is suffering from complications of abortion. The injunction thus requires a report even where a health practitioner may reasonably believe the medical condition has been caused by sexual conduct exempt from reporting under *Planned Parenthood's* construction of the Act. In short, the injunction requires reporting where the Act does not. The injunction is therefore overbroad; it may not stand in its present form.

However, this does not mean that no injunction is appropriate. In this case, the minor's boyfriend was not under age 14 but was rather an adult 21 years old. In our view, at all relevant times the Act has required the reporting of conduct involving a minor under age 14 and an adult reasonably suspected to constitute a violation of subdivision (a) of section 288. Clinic possessed information sufficient to require a report under section 11166.

Since the record shows Clinic has refused to report as required by the Act, the trial court may enter a modified preliminary injunction enjoining Clinic from refusing to report under section 11166 such reasonable suspicions of violations of subdivision (a) of section 288 as must be reported under the current Act.

---

facts that could cause a reasonable person in a like position, drawing when appropriate on his or her training and experience, to suspect child abuse."

[7] We have no reason to believe that health practitioners would refrain from obtaining information required by prevailing medical standards in order to avoid reporting under the Act.

## II

### Rights of Privacy

 Clinic and amicus contend that reporting the consensual sexual conduct of minors violates their constitutional privacy rights.

 It is established that minors have a right of privacy secured by the federal and state Constitutions that protects private information about a minor's sexual experience and medical condition. (*Carey* v. *Population Services International* (1977) 431 U.S. 678, 692-693 [52 L.Ed.2d 675, 689-690, 97 S.Ct. 2010]; *Planned Parenthood of Missouri* v. *Danforth* (1976) 428 U.S. 52, 74 [49 L.Ed.2d 788, 808, 96 S.Ct. 2831]; Cal. Const. art. I, § 1; *Planned Parenthood Affiliates* v. *Van de Kamp, supra,* 181 Cal.App.3d at pp. 276-278.)

 "Under either Constitution, sexual privacy is not absolute, but may only be infringed upon by the least restrictive alternative necessary to facilitate a compelling state interest. (*Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d at pp. 280-281; *Eisenstadt* v. *Baird, supra,* 405 U.S. at p. 453 [31 L.Ed.2d at p. 362] ['the *individual* . . . [has the right] to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child'].) The state bears the onus of proving that any burden on sexual privacy rights is necessary to fulfill a compelling state interest. (*Carey* v. *Population Services International, supra,* 431 U.S. at pp. 684-686, 690-691 [52 L.Ed.2d at pp. 684-686, 688-689].) Although the mature minor enjoys the same sexual privacy rights as an adult, the state's burdening of the minor's rights is governed by a standard which is 'apparently less rigorous' than the compelling state interest test, 'because of the State's greater latitude to regulate the conduct of children.' (At p. 693, including fn. 15 [52 L.Ed.2d at p. 690].) The state need show that the privacy burden serves ' "any significant state interest . . . that is not present in the case of an adult" ' (*Ibid.,* fn. omitted; quoting *Planned Parenthood of Missouri* v. *Danforth, supra,* 428 U.S. at p. 75 [49 L.Ed.2d at p. 808].)" (*Planned Parenthood, supra,* 181 Cal.App.3d at p. 279.)

 We have no doubt that the reporting to a child protective agency of a suspected violation of subdivision (a) of section 288, a felony, serves both a compelling state interest and also a significant state interest not present in the case of an adult. One compelling state interest is the apprehension of the perpetrator of a felony offense. A significant state interest not present in the case of an adult is the detection and prevention of child abuse.

(*People* v. *Stritzinger* (1983) 34 Cal.3d 505, 512 [194 Cal.Rptr. 431, 668 P.2d 738].) We therefore conclude minors' federal or state constitutional privacy rights are not violated by reporting to a child protective agency as required by the Act. (See *People* v. *Younghanz* (1984) 156 Cal.App.3d 811, 816-817 [202 Cal.Rptr. 907].)

▆▆▆ Clinic and amicus also contend that our construction of the Act would violate minors' *informational* privacy rights under the state Constitution. (Cal. Const., art. I, § 1.) ▆▆▆ This is the right to be free of overbroad collection and retention of unnecessary personal information by the government. (*White* v. *Davis, supra,* 13 Cal.3d at p. 775.) The retention of private information by the government can be justified only upon a showing of a compelling governmental interest in the retention. (*Id.,* at p. 776; *Planned Parenthood, supra,* 181 Cal.App.3d at pp. 280-281.)

▆▆▆ Clinic and amicus assert minors' informational privacy rights are violated by sections 11169 and 11170 of the Act, which require child protective agencies to forward child abuse reports (except unfounded reports) to the Department of Justice, which then maintains an index of such reports. Subdivision (a) of section 11170 says in pertinent part, "The index shall be continually updated by the department and shall not contain any reports that are determined to be unfounded."

In *Planned Parenthood* the court concluded this recordkeeping of the voluntary sexual conduct of minors violated their right to informational privacy. (181 Cal.App.3d at p. 281.) However, on this point *Planned Parenthood* is distinguishable for a variety of reasons.

There, for example, the court was presumably commenting upon the retention of data involving voluntary sexual conduct between minors of a similar age both of whom were under age 14, since that was the court's holding. (181 Cal.App.3d at p. 282.) Here, of course, we consider the retention of only such reports as involve substantiated violations of subdivision (a) of section 288.[8]

Moreover, in *Planned Parenthood* the court acknowledged that "the Attorney General has not actively contested the [privacy] issue." (181 Cal.App.3d at p. 281.) Here, the Attorney General does.

Furthermore, in *Planned Parenthood,* the court relied in part on *Jones* v. *Superior Court* (1981) 119 Cal.App.3d 534 [174 Cal.Rptr. 148], where, at

---

[8] As we have noted, unfounded reports must be purged.

page 549, the court concluded "Surely no aspect of a woman's medical profile is more sensitive in terms of privacy interests than her obstetrical-gynecological history." (*Planned Parenthood, supra,* at p. 281.) Here, the People argue that the report required by sections 11169 and 11170 does not contain the sort of intimate information described in *Jones.* We agree. We have granted the People's request for taking judicial notice of the Child Abuse Investigation Report form adopted by the Department of Justice pursuant to the command of section 11169. (Evid. Code, §§ 452, subd. (h); 459.) The report form calls for names, ages, and relationships of the parties involved. Under "type of abuse," the preparer is asked to check one or more boxes for (1) physical, (2) mental, (3) incest, (4) other sexual assault, (5) sexual exploitation, (6) severe neglect, (7) general neglect, or (8) "other." No further details of the abuse are solicited. There is no recounting of the medical profile of the victim nor of her obstetrical-gynecological history.

Finally, in *Planned Parenthood,* "The only justification [for the reporting to the Department of Justice] was advanced for the first time at oral argument. The Attorney General contended the reporting of voluntary conduct was important for social science research." (181 Cal.App.3d at p. 281.) The *Planned Parenthood* court therefore declined "to justify governmental investigations and computer files of voluntary sexual behavior as a contribution to a future academician's database." (*Ibid.*) Here, we are aware that the Legislature itself stated the compelling state interest underlying the record retention requirement when it enacted uncodified section 5 in connection with the 1984 amendment of section 11170, declaring in relevant part as follows: "(a) The Legislature finds and declares that child abuse is a serious problem, as evidenced by the fact that the number of cases reported to the Attorney General each year pursuant to Section 11170 of the Penal Code has increased over 900 percent from 1974 through 1983. One of the major problems in treating and preventing child abuse is the need to quickly and accurately identify cases, which frequently involve family members or other individuals in close relationship to the victim. [¶] (b) The Child Abuse Central Registry provided by Section 11170 of the Penal Code is an important source of information assisting local law enforcement officials and child protective agencies in identifying, apprehending, and prosecuting child abusers." (Stats. 1984, ch. 1613, § 5, p. 5728.)

This declaration of legislative purpose is sufficient to show a compelling state interest justifying the retention of substantiated reports of child abuse, including those involving victims of violations of subdivision (a) of section 288, a felony. The minimal information contained in the Child Abuse Investigation Report form adopted by the Department of Justice is reasonably necessary to satisfy the compelling interest identified by the Legislature.

## DISPOSITION

The order granting a preliminary injunction is reversed. The matter is remanded to the trial court to enter a modified preliminary injunction consistent with this opinion. Appellants are awarded their costs on appeal.

Sparks, J., concurred.

**PUGLIA, P. J.**—I concur in the judgment and opinion of the court. However, because the court's opinion accepts uncritically the holding of *Planned Parenthood Affiliates* v. *Van de Kamp* (1986) 181 Cal.App.3d 245, I write separately to register my strong disagreement with that decision. That disagreement notwithstanding, I acknowledge I am not at liberty to repudiate or ignore *Planned Parenthood*. This inability derives from the presumption that the Legislature by subsequent amendment adopted *Planned Parenthood*'s holding that it is not the intent of the Child Abuse and Neglect Reporting Act (Act) to impose a duty to report voluntary sexual conduct between minors under 14 and of similar age. As stated by the Supreme Court, " '[w]here a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it.' (*People* v. *Hallner* (1954) 43 Cal.2d 715, 719 [277 P.2d 393; *People* v. *Fox* (1977) 73 Cal.App.3d 178, 181 [140 Cal.Rptr. 615].)" (*Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345, 353 [211 Cal.Rptr. 742, 696 P.2d 134].)

Although I am bound to presume that in amending the Act (Stats. 1987, ch. 1459) the Legislature acted with knowledge of *Planned Parenthood* and its holding (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), there is absolutely nothing in the statutory history which would support that presumption. Because the *Planned Parenthood* holding substantially emasculates the Act as it applies to the most vulnerable class within its protection, children under 14, the presumption constitutes an egregiously mischievous fiction.

The major premise of *Planned Parenthood* is flawed. The court postulates ambiguity in the Act as to whether it requires reporting as child abuse the voluntary sexual activity of a minor under age 14 with another minor of similar age. The Act requires a report to be made on "reasonable suspicion" of child abuse (Pen. Code, § 11166). "Child abuse" means "sexual abuse." (Pen. Code, § 11165.6.) "Sexual abuse" means sexual assault which in turn means "conduct in violation of . . . subdivision (a) or (b) of section 288 (lewd or lascivious acts upon a child under 14 years of age) . . . ." (Pen. Code, § 11165.1.) In the clearest of language the act requires health practi-

tioners and others to whom it applies who reasonably suspect that a child under the age of 14 has been the victim of a violation of section 288 of the Penal Code forthwith to report the suspected instance of child abuse to the appropriate authority.

Unconvinced that the statute means what it says, the *Planned Parenthood* court begins its "analysis of the intent of the Legislature by noting that a court engaging in statutory interpretation ' "should take into account matters such as context, the object in view, the evils to be remedied, [and] the history of the times." ' " (*Planned Parenthood, supra,* 181 Cal.App.3d at p. 266.) Following this ambitious preamble, the court identifies the principles which will inform its inquiry into legislative intent. Relying on "factual material . . . presented to [the] court in the form of extensive declarations by health care professionals and references to statistical and sociological studies" (*id.,* at p. 268, fn. 9), the court sets out these "factual premises": "First, there are minors under 14 who are voluntarily engaging in sexual activity and who 'urgently need health care relating to their sexual conduct.' Ample statistical studies show considerable voluntary sexual activity on the part of young adolescents, many under the age of 14. Because of their sexual activity, these young minors have an urgent need for prenatal care, contraception, abortion services and treatment for sexually transmitted diseases. Second, if such minors are unable to obtain reproductive health care on a confidential basis, without their sexual conduct being reported to law enforcement for investigation, they will be deterred from seeking such care. Third, large numbers of minors in need of prenatal care, abortions to prevent unwanted parenthood, treatment for sexually transmitted diseases and the like will refrain from seeking medical care, to the obvious detriment of their health and that of their infants and sexual partners. For example, young teens are less likely to receive adequate prenatal care and suffer higher rates of infant mortality and birth defects; the sexually transmitted disease known as chlamydia leads to infertility, ectopic pregnancy and increased infant mortality, and is considered of epidemic proportions among teenagers." (Fn. omitted; *id.,* at p. 268.) Furthermore, "Minors will also be deterred from seeking birth control. The [Attorney General] concludes a minor's request for information regarding birth control will not trigger a reporting obligation if no past sexual conduct is indicated. Petitioners cite studies showing that many minors engage in sex first and seek birth control assistance second; they also assert that because health care professionals generally conduct counseling sessions before prescribing a particular birth control method, prior sexual activity will be revealed and a reporting obligation will arise in virtually every birth control request." (*Id.,* at p. 268, fn. 8.) Finally "It is nearly impossible to establish a professional, therapeutic relationship without a promise of confidentiality which the

professional can keep. Also, requiring the reporting of voluntary conduct will overburden the reporting system and divert resources from the investigation of reports of actual abuse—thereby working a detriment to the very abused children the Legislature has acted to protect." (*Id.,* at p. 269.)

*Planned Parenthood's* "factual premises" are not adjudicative facts in any sense of the word. Neither are they part of the legislative history of the Act although it may be assumed that these same issues were considered by the Legislature which passed the Act. They are legislative facts, i.e., "facts which help the tribunal determine the content of law and of policy and help the tribunal to exercise its judgment or discretion in determining what course of action to take . . . . [I]n most cases the applicable law and policy have been previously established. But whenever a tribunal engages in the creation of law or of policy, it may need to resort to legislative facts . . . ." (2 Davis, Administrative Law (1958) § 15.03 p. 353.) It bears emphasis that the issue before the *Planned Parenthood* court involved statutory interpretation, not "the creation of law or of policy."

The Act has established the policy of the law. The court's "factual premises" simply argue with the wisdom of that settled legislative policy. They are not relevant to the intent of the Act. And to the extent they are relevant to the policy choice (a choice for the Legislature, not the courts), they logically argue against the reporting of suspected abuse in the case of all children under age 14 irrespective of the age of the perpetrator, i.e., whether of similar age as *Planned Parenthood* holds, or, as here, 21 years old. Perhaps for this reason the *Planned Parenthood* court simply sets forth these "factual premises" and, then without explicitly pressing them into further service, shifts the focus of its analysis to other issues. Nevertheless, the very articulation of these premises provides a revealing context in which to evaluate the *Planned Parenthood* opinion.

Ultimately the *Planned Parenthood* court's interpretation of the Act so as to exempt reporting of voluntary sexual conduct of minors under 14 and of similar age rests upon two grounds: (1) The interpretation is said to be necessary to harmonize the Act with other statutes which medically emancipate minors, a conclusion with which we disagree (see maj. opn., *ante*, pp. 237-238); and (2) since an under 14 year old "is probably legally incapable [under Pen. Code, § 26] of violating section 288" (181 Cal.App.3d at p. 273), his conduct otherwise in violation of that section would not create a "victim of child abuse." (Pen. Code, § 1116.)

Absent clear proof they know of its wrongfulness, children under the age of 14 are not capable of committing a crime. (Pen. Code, § 26.) However,

the Act is not concerned with adjudicating guilt or fixing criminal responsibility. Rather it directs specified persons such as health practitioners to report instances of child abuse which they know of or reasonably suspect. (Pen. Code, § 11166.) "[R]easonable suspicion' means that it is objectively reasonable for a person to entertain such a suspicion, based upon facts that could cause a reasonable person in a like position, drawing when appropriate on his or her training and experience, to suspect child abuse." (Pen. Code, § 11166.) The duty to report arises only when the health practitioner or other person covered by the Act ". . . has knowledge of or observes a child in his or her *professional capacity* or within the *scope of his or her employment* whom he or she knows or reasonably suspects has been the victim of child abuse . . . ." (Italics added; Pen. Code, § 11166, subd. (a).) Thus there is no duty to investigate to determine if in fact there has been child abuse but only to observe and report facts constituting reasonable suspicion of child abuse which come to the attention of the reporting individual in the course of his or her professional capacity or employment. As the majority opinion states, "nothing in the Act requires professionals such as health practitioners to obtain information they would not ordinarily obtain in the course of providing care or treatment." (*Ante*, pp. 239-240.)

Where a health practitioner treats a child under 14, the observed fact that the child either is or has been pregnant or has a sexually transmitted disease alone constitutes reasonable suspicion the child has been the victim of violation of Penal Code section 288 and thus of child abuse. Unless it is essential for purposes of diagnosis or treatment, the health practitioner has no duty in such cases gratuitously to investigate and determine the person responsible for the child's condition or that person's age. The statutes assign the investigative function to other agencies of government. If the investigation discloses the person responsible for the condition of the child is incapable of criminal conduct and there is no child abuse, the report will be deemed unfounded and handled accordingly. (Pen. Code, §§ 11169, 11170.)

"Reasonable suspicion" is not unlike probable cause or other like standards which imply a lack of absolute certainty or even the presence of reasonable doubt. A number of official actions, many with consequences more dire to the affected individual than the investigation called for by the Act, are authorized on probable cause or its equivalent. Common examples are arrests and searches some of which lead to prolonged incarceration or deprivation of property although ultimately determined to be "unfounded." Another example is found in Penal Code section 844 which allows an officer forcibly to enter a house to make a felony arrest if he has "reasonable grounds for believing" the suspected felon is within. If the elements of section 844 are otherwise satisfied, the officer is not first required to

ascertain if the suspect is over the age of 13 before acting, much less his criminal capacity under the other subdivisions of Penal Code section 26. The same is true in making a felony arrest on probable cause.

*Planned Parenthood*'s interpretation of the Act is not only erroneous, it will lead to several mischievous consequences. First, it may be read to suggest health practitioners dealing with patients under age 14 who are or have been pregnant or have a sexually transmitted disease have a duty to conduct an investigation into matters unrelated to and beyond the scope of their legitimate professional duties. Otherwise, if the health practitioner does not determine the age of the perpetrator, no duty to report arises unless the patient volunteers the information, an unlikely prospect in most cases. Second, by exempting the voluntary sexual conduct of children under 14 and *of similar age* it creates a hopelessly blurred line when a bright one should exist to guide health practitioners and others subject to the Act. A person under age 14 is not conclusively presumed incapable of committing a violation of Penal Code section 288. It is not all that unusual for mature children age 13 or younger sexually to molest children even younger than they knowing it is wrong to do so. Is such a 13 year old *of similar age* to a 10 or 11 year old? Is a health practitioner who sees and deals only with the "victim" in a position to make that judgment? Third, it would deny protection to the under 14 year old who is sexually abused by an authority figure, e.g., parent, step-parent, etc., and is for that reason fearfully reticent without active encouragement to disclose the perpetrator's identity or any information about him. Fourth, it permits wholesale evasion by health practitioners unsympathetic to the policy of the Act who may with impunity adopt the strategem of remaining wilfully ignorant of information which in any event is of no medical significance, i.e., the age of the perpetrator.

Under the *Planned Parenthood* interpretation of the Act, many cases of genuine child abuse will go unreported in the category of the under age 14 victim, i.e., the victim of sexual abuse most in need of the protection the Act was designed to afford. Although bound by that interpretation, I believe it is egregiously wrong.