[64 C.2d 3; 48 Cal.Rptr. 689, 409 P.2d 913]

[Crim. No. 8151.   In Bank.   Jan. 26, 1966.]

In re ALFRED WOODS on Habeas Corpus.

Alfred Woods, in pro. per., and Robert C. Anderson, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, and Doris H. Maier, Assistant Attorney General, for Respondent.

PEEK, J.—By his application for the writ of habeas corpus Alfred Woods, an inmate of Folsom Prison, seeks relief from the determination that he is an habitual criminal within the terms of subdivision (a) of section 644 of the Penal Code.

The certified abstract of judgment herein reveals that on February 25, 1959, petitioner, charged with robbery of the first degree and four prior felony convictions, pleaded guilty to the crime charged, admitted the four priors, and was thereupon adjudged an habitual criminal within the meaning of subdivision (a) of section 644 of the Penal Code.[1]

---

[1] As here relevant, the indicated subdivision provides in substance that one convicted of robbery who has been twice previously convicted of

Of the four admitted priors, two were for offenses not within the provisions of the subdivision. The two remaining were (1) auto theft in Nebraska in 1932 and (2) burglary in Utah in 1946. For each of these a term was served in state prison.

Petitioner here collaterally attacks each of these prior convictions on the ground that he neither was advised of his right to, nor was provided with, nor expressly waived, the services of counsel before his entry of a guilty plea as to each. He here contends that *Gideon* v. *Wainright,* 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733], and subsequent cases giving the *Gideon* rule retrospective application render invalid each of these prior convictions so that their use in the determination of habitual criminality is improper.

██ Preliminarily, we reject respondent's argument that petitioner should be compelled to seek relief from the Nebraska and Utah convictions in courts of those jurisdictions before seeking relief from the California adjudication of habitual criminality. While we have heretofore limited our examination of foreign convictions used to establish habitual criminality to a consideration of the crime relative to the categories established by section 644 (*In re McVickers,* 29 Cal.2d 264, 278-279 [176 P.2d 40]; *In re Seeley,* 29 Cal.2d 294, 301-302 [176 P.2d 24]), and to the determination of whether the rendering court had jurisdiction to try the defendant (see *In re Wolfson,* 30 Cal.2d 20, 21 [180 P.2d 326]; *In re Seeley, supra,* 29 Cal.2d 294, 296), we here determine that comity does not require, and reason does not allow, a refusal to examine for constitutional defects foreign judgments used in this state to support an adjudication of habitual criminal status. ██ "To the extent that any State makes its penal sanctions depend in part on the fact of prior convictions elsewhere, necessarily it must assume the burden of meeting attacks on the constitutionality of such prior convictions." (*United States* ex rel. *Savini* v. *Jackson,* 250 F.2d 349, 355.)

██ We thus turn to the merits of petitioner's contention, aware of the difficulties which the passage of time has created, but equally cognizant that the effort is required. The words of Circuit Judge Kaufman in *United States* ex rel. *Durocher* v. *LaVallee,* 330 F.2d 303, wherein retrospective application was given the *Gideon* decision, succinctly state our problem:

---

certain enumerated crimes, burglary and grand theft among them, and who has served separate prison terms for such convictions in this state or elsewhere, shall be adjudged an habitual criminal and shall be punished by imprisonment for life.

"[T]he [courts] may find it difficult to determine whether those tried in the remote past were indeed denied the assistance of counsel. Records may be stale, incomplete, or missing, and it may hence be difficult accurately to reconstruct events at prosecutions long ago and far away. These prospects are deeply disturbing. Here, however, the fundamental nature of the right protected by *Gideon* v. *Wainwright* and the injustice attendant upon the continued imprisonment of those defendants who have been denied representation by counsel at an important stage of a criminal prosecution, have precluded the limitation of *Gideon* to prospective application." (*United States* ex rel. *Durocher* v. *LaVallee, supra,* at p. 313.)

The relevant authority and records relative to the 1932 Nebraska auto theft conviction are as follows:

Section 29-1803 of the Nebraska Code, effective in 1932, read in part as follows: "The court before whom any person shall be indicted for any offense which is capital, or punished by imprisonment in the penitentiary, is hereby authorized and required to assign such person counsel not exceeding two. . . ."

The record of the 1932 Nebraska conviction contains a certified copy of the order of commitment, which states that petitioner was arraigned, and "being fully advised in the premises" and cautioned concerning the possible penalty, pleaded guilty to the theft of an automobile. The order further notes that the county attorney appeared and argued on behalf of the state, but no reference is made as to the presence or absence of counsel for petitioner, nor is mention made of the above-quoted portion of the Nebraska Code, or the matter of appointment of counsel, or the waiver of counsel.

As to the 1946 Utah burglary conviction, the following authority and records are here relevant:

Section 77-22-12 of the Utah Code, effective in 1946, read as follows: "If the defendant appears for arraignment without counsel, he must be informed by the court that it is his right to have counsel before being arraigned, and must be asked whether he desires the aid of counsel. If he desires, but is unable to employ counsel, the court must assign counsel to defend him."

The record of the 1946 Utah conviction contains a certified copy of the commitment order. It appears therefrom that petitioner appeared at arraignment "not being represented by counsel," was "duly arraigned," was handed a copy of the information, and "enter[ed] a plea of guilty of the crime as charged in the information." Here, as in the Nebraska case, no reference is made to the relevant portion of the state code,

nor is mention made of the matter of appointment of counsel or waiver thereof.

The respective state statutes, together with the record entries of petitioner's "being fully advised in the premises" (Nebraska) and his being "duly arraigned" (Utah), require that here, as in the recent case of *In re Johnson,* 62 Cal.2d 325 [42 Cal.Rptr. 228, 398 P.2d 420], we give effect to the presumption that official duty was performed (*People* v. *Farrara,* 46 Cal.2d 265 [294 P.2d 21]), and the principle that every reasonable intendment must be made in favor of judgments collaterally attacked (*In re Bell,* 19 Cal.2d 488 [122 P.2d 22]) by assuming that in each of the two proceedings at issue petitioner was advised of his rights to counsel.

However, these principles cannot carry us beyond this point. Since it appears that petitioner was not represented by counsel in each of the proceedings at issue, we are faced with the determination of whether petitioner effectively waived his constitutional right to counsel on those occasions. (*In re Johnson, supra,* 62 Cal.2d 325, 333.) ██ Further, this inquiry must proceed in light of the following presumptive guidelines enunciated by the United States Supreme Court: (1) " . . . '[C]ourts indulge every reasonable presumption against waiver' of fundamental rights." (*Carnley* v. *Cochran,* 369 U.S. 506, 514 [82 S.Ct. 884, 8 L.Ed.2d 70]; quoting from *Johnson* v. *Zerbst,* 304 U.S. 458, 464-465 [58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357]; accord, *In re Johnson, supra,* 62 Cal.2d 325, 334.) (2) "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." (*Carnley* v. *Cochran, supra,* 369 U.S. 506, 516; accord, *In re Johnson, supra,* 62 Cal.2d 325, 334.)

██ Clearly, the records of the Nebraska and Utah convictions are inadequate to show waiver in light of these principles. ██ Respondent, however, argues that because petitioner, while represented by counsel, admitted the prior Nebraska and Utah convictions at the time he pleaded guilty to the present offense of robbery, he waived any right to later challenge those proceedings. We note, however, that *Gideon* v. *Wainwright, supra,* 372 U.S. 335, was not decided until 1963, several years after the admission of these priors. Neither petitioner nor his then counsel can be held accountable for failing to raise objections which could only be sustained by refer-

ence to cases yet to be determined. (See *People* v. *Forbs,* 62 Cal.2d 847, 851 [44 Cal.Rptr. 753, 402 P.2d 825].)

Respondent properly observes that matters of chronology have as profound an effect on the position of the state as on that of petitioner. Thus, it is argued with vigor that the examination of past convictions according to contemporaneous standards essentially holds the courts which rendered those convictions accountable for failing to proceed in accordance with decisions not yet rendered at the time of conviction. The truth of this observation cannot be denied. But neither can it be denied that retrospective application of constitutionally-grounded procedural rules necessarily entails this result. It is settled that *Gideon* v. *Wainwright, supra,* 372 U.S. 335, applies retrospectively without regard to time. (*United States* ex rel. *Durocher* v. *LaVallee, supra,* 330 F.2d 303.) The task of the courts is thus defined. The circumstance that records of long-past convictions are inadequate to accurately determine questions of advice and waiver, while lamentable, is quite irrelevant to the fact that the determination must be made, and made upon the basis of whatever materials are available in the particular case, in light of guidelines heretofore enunciated by the United States Supreme Court.

We now turn to respondent's contention that petitioner, by pleading guilty after being advised of his right to legal assistance, effectively waived that right in each of the instances herein relevant. We faced a similar contention in the recent case of *In re Johnson, supra,* 62 Cal.2d 325. There, as above noted herein, we held that petitioner had been advised of his right to legal assistance, but nothing explicitly appeared in the record as to his waiver of that right. We determined that ''Where, as here, petitioner neither expressly declined nor discharged counsel but merely responded 'Guilty' to the court's question of how he pleaded, there is nothing in the record which remotely intimates that he thereby made an *intelligent and understanding* waiver of his constitutional right to counsel.'' (*In re Johnson, supra,* 62 Cal.2d 325, 334.) This, however, as we went on to recognize in *Johnson,* does not preclude a finding of waiver; it only precludes such a finding based wholly on a record such as there presented. ''Moreover, it is settled that 'The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, *upon the particular facts and circumstances surrounding that case,* including the background, experience, and conduct of the accused.' (Italics added.) (*Johnson* v.

*Zerbst* (1938) *supra,* 304 U.S. 458, 464; accord, *People* v. *Chesser* (1947) *supra,* 29 Cal.2d 815, 822 [4] [178 P.2d 761, 170 A.L.R. 246].)'' (*In re Johnson, supra,* 62 Cal.2d 325, 335.)

It is true that in *Johnson* we observed that the determination to be made according to the indicated factors should be made before the plea is taken, and that this determination should affirmatively appear in the record of the proceedings. (*In re Johnson, supra,* 62 Cal.2d 325, 335-336.) This insistence on an adequate record manifests our continuing concern that facts bearing on procedural rights constitutionally guaranteed be fully presented to the appellate courts, and it further evidences our conviction that such rights will be more effectively secured to each person through such explicit procedures. These considerations are reflected in our recent decisions dealing with the point in time at which the right to counsel attaches. Thus, we have suggested that waiver of counsel after the accusatory stage of interrogation has been reached will not be found if the record does not clearly reflect the necessary elements of that waiver. (See, e.g., *People* v. *Stewart,* 62 Cal.2d 571, 581 [43 Cal.Rptr. 201, 400 P.2d 97]; *People* v. *Lilliock,* 62 Cal.2d 618, 622 [43 Cal.Rptr. 699, 401 P.2d 4]; *People* v. *Sears,* 62 Cal.2d 737, 742 [44 Cal.Rptr. 330, 401 P.2d 938].) In those cases, however, the state did not contend that proper advice on the right to counsel and the right to remain silent had been given at the commencement of the accusatory stage of interrogation (see *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361]), and resort to materials outside the strict record to determine waiver would have been an idle act under the circumstances.

It is clear, however, that the matter of waiver of constitutional rights is to be determined on the *facts* of each particular case (*In re Johnson, supra,* 62 Cal.2d 325, 335), and that an inflexible exclusive adherence to the strict record is neither constitutionally required nor in the best interests of effective judicial administration. This consideration is the more apparent when, as here, we examine convictions entered long before the right sought to be enforced was judicially articulated. Though we must insist that past convictions stand the test of current constitutional principles relative to the right to counsel, we cannot reasonably insist that the record of those convictions reflect impossible prescience.

In *Rice* v. *Olson,* 324 U.S. 786 [65 S.Ct. 989, 89 L.Ed. 1367], it was held that, although the Fourteenth Amendment would

not permit a presumption of waiver from the appearance of the accused without counsel and the silence of the record as to a request, a fact issue as to whether an effective waiver had occurred was raised by his plea of guilty. There petitioner's denial of waiver by word or act was controverted by the state's allegation of waiver, and a hearing was ordered. *Carnley* v. *Cochran, supra,* 369 U.S. 506, explicitly approved the *Rice* rationale, but held that a hearing was not required in that case because the state did not allege that there had been an affirmative waiver. (*Carnley* v. *Cochran, supra,* 369 U.S. 506, 516.) In the course of that decision the court uttered its well-known language to the effect that waiver will not be presumed from a silent record (*Carnley* v. *Cochran, supra,* 369 U.S. 506, 516), but it clearly did not hold that non-waiver will be presumed from a silent record. Thus, the clear position of the highest court is that the determination of waiver is not to be based wholly on the strict record of proceedings below, though a party who does not raise the fact issue by proper allegations may be bound by that record.

Our conclusion on this question is reinforced by these words of Judge Kaufman in *United States* ex rel. *Durocher* v. *LaVallee* which, though specifically directed to the U. S. District Courts relative to their examination of past state convictions, are peculiarly applicable to our inquiry herein: "Gideon has changed a rule of law, but it has not abrogated the traditional responsibility of the District Courts accurately to determine the factual patterns upon which that law is to be applied. While issues of 'fundamental fairness' have been removed from their consideration, the District Courts will now be confronted with factual determinations as to whether each appellant was, in fact, advised of his right to counsel, whether he waived that right, and if not, and if indigent, whether he was afforded court-appointed counsel. In resolving such questions, there is no reason to suppose that the Courts will not employ the methods and techniques which have long been familiar to our judicial system. Thus, they will undoubtedly consider the appellant's credibility; available court records; the prevailing practices of a particular state; any evidence which the State might choose to offer; and all other relevant considerations." (*United States* ex rel. *Durocher* v. *LaVallee, supra,* 330 F.2d 303, 313.)

Petitioner's declaration in support of his application herein clearly alleges that he did not waive his right to the assistance of counsel in either of the prior state proceedings. Respondent's return to our order to show cause controverts that allega-

tion. The fact issue is thus joined, and we therefore find in accordance with the principles above discussed that a hearing should be had in order to determine whether petitioner, by entering a plea of guilty in each of the proceedings at issue after having been advised of his right to counsel in each instance, thereby intelligently and understandingly waived that right relative to either or both of those proceedings. Since the determination of these questions might affect petitioner's present status as an habitual criminal, we return the cause for such hearing to the court wherein judgment establishing that status was rendered.

The writ is granted and the Superior Court of Alameda County is directed to redetermine petitioner's status as an habitual criminal in further proceedings in accordance with the views expressed herein.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.