8 Cal.App.3d 103 (1970)
87 Cal. Rptr. 178
In re J.D.W.B., a Person Coming Under the Juvenile Court Law.
ROBERT E. NINO, as Chief Juvenile Probation Officer, etc., Plaintiff and Respondent,
v.
J.D.W.B., Defendant and Appellant.
Docket No. 26474.
Court of Appeals of California, First District, Division Four.
May 26, 1970.
*105 COUNSEL
Harris L. Werksman, under appointment by the Court of Appeal, for Defendant and Appellant.
Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Michael J. Phelan, Derald E. Granberg and Joyce Nedde, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
DEVINE, P.J.
Under the provisions of section 1803 of the Welfare and Institutions Code, this appeal is prosecuted from an order for continued detention. The order was made pursuant to the provisions of sections 1800, 1801 and 1802 of that code. These sections provide that upon application of the Youth Authority Board, the court, after statutorily described notice and full hearing, if it is of the opinion that discharge of any person under the control of the Youth Authority at the ordinarily applicable time would be physically dangerous to the public, shall order the Youth Authority to continue treatment of such person.
Appellant was committed to the Youth Authority on December 4, 1963. He was then 15 years old. On September 3, 1968, the Youth Authority applied to the court for an order extending its control for two years beyond the date of his 21st birthday. On November 1, 1968, appellant filed a petition for writ of habeas corpus, alleging invalidity of his original commitment in 1963. Order to show cause was issued and the matter was *106 heard at the same time as the hearing of the Youth Authority's petition. Appellant's petition for the writ was denied. The order is not appealable. (3 Witkin, Cal. Procedure (1954) § 18, p. 2161.) But invalidity of the original commitment was asserted as a defense against the Youth Authority's petition for extended control. Appellant also defended on the merits. But the order was made.
On appeal, two points are made: first, that the hearing in 1968 was conducted in such way as to violate appellant's right to due process of law, and that the Youth Authority did not present substantial evidence in support of its petition; and second, that the original commitment was invalid.

1968 Hearing Under Welfare and Institutions Code Section 1801
The original commitment was based on a charge that appellant had violated section 288 of the Penal Code by wilfully and lewdly committing a lewd act upon a child under the age of 14 years, with the intent of arousing the sexual desires of himself or of the child. The offense was alleged to have been committed upon a 5-year-old girl.
There was conflicting evidence at the section 1801 hearing, five years later. There was evidence favorable to appellant, particularly from a report of Dr. Lowe to the effect that appellant did not pose an inordinate risk to society, and an earlier report by Dr. Latini discounting the probability of further child molestation. On the other hand, Dr. Wittner testified that appellant is dangerous in that sexual acts against children are likely. A married brother of appellant asked the court to let appellant come home and stay with him.
(1) The hearing was entirely fair. We do not agree with appellant that Dr. Wittner should not have been permitted to testify because he was a consultant to the Department of Corrections. Nor do we find the hearing to have been deficient because Dr. Latini was not called as a witness for the Youth Authority. Appellant was ably represented by counsel and he did not request that Dr. Latini testify. Altogether, we find the hearing to be one in which there was evidence, on both sides, upon which the court could have made a finding either way.
(2a) This leads us to say that, so far as the record shows, actually the court did not make a finding. (3) A minute order simply states: "At this time the Court finds and determines that the Writ of Habeas Corpus be dismissed, and that the petition brought by the Youth Authority be granted, and that John be returned to the Youth Authority for an additional two years, pursuant to the provisions of Section 1800 et seq. of the *107 Welfare and Institutions Code." This does not constitute a finding that "discharge of the person would be physically dangerous to the public because of his mental or physical deficiency, disorder, or abnormality," to use the words of Welfare and Institutions Code section 1801. The reference to the provisions of the code, in the quoted part of the order, relates, as we read it, to the disposition to be made of appellant, that is, committing him to the Youth Authority. It is required that a finding shall be made in these cases. (In re J.F., 268 Cal. App.2d 761, 773 [74 Cal. Rptr. 464]; Specht v. Patterson, 386 U.S. 605, 610 [18 L.Ed.2d 326, 330, 87 S.Ct. 1209].) (2b) But appellant has not made a point of the lack of a finding, perhaps because he prefers to avoid delay in having the cause sent back to the trial court so that a finding might be made. Therefore, we shall proceed as though there had been a proper finding.
We find nothing in the section 1801 proceeding, save in that part which relates to the original commitment (made by a different judge), which would bring about a reversal.

The Original Commitment
(4) The validity of the extended control under Welfare and Institutions Code section 1800 et seq. depends in part on the validity of the original commitment. (In re J.F., supra, 268 Cal. App.2d at p. 766; In re Bevill, 68 Cal.2d 854, 858-860 [69 Cal. Rptr. 599, 442 P.2d 679].) (In In re J.F., appellant was not able to challenge on appeal the validity of the original commitment as it had been applied in the 1800-1802 proceedings, because he had not raised the point in those proceedings but sought to do so for the first time on appeal.) In the instant case, a determined attack on the original commitment was made in the proceedings for extended control.
(5) The 1963 hearing was conducted in such manner as to violate concepts of due process of law. We observe, in the first place, that although appellant does not make this point, the notice of the hearing of the petition which is required to be given by sections 658 and 659 of the Welfare and Institutions Code was deficient in its reference to the right to an attorney. The notice says: "Said minor, his parent or guardian, is entitled to have his attorney present at the hearing on said petition. If the parent or guardian is indigent and cannot afford an attorney, and such minor, his parent or guardian, desires to be represented by an attorney, such parent or guardian shall promptly notify the Clerk of the Juvenile Court at the place of hearing hereinbefore set forth." Section 659 of the Welfare and Institutions Code, which specifies the contents of the notice, calls for a "statement that the minor and his parent or guardian or adult relative, as the case may be, to whom notice is required to be given, are entitled to *108 have an attorney present." (Italics added.) The provisions relating to an adult relative had become effective on September 20, 1963 (Stats. 1963, ch. 917, § 8, p. 2167), two months before the notice herein was made and served. Since both of appellant's parents were dead and he had no guardian, the omission of reference to the rights of the adult relative was not without its importance, even though the notice actually was served on an adult brother, George B. The notice did not inform the brother of his right, established by statute (Welf. & Inst. Code, § 659), to inform the clerk of the juvenile court of his desire to have representation by an attorney if he were indigent and could not afford counsel. Since appellant does not mention this matter in his brief, we do not hold that the deficiency of notice is, in itself, cause for reversal, but we refer to the matter because it is indicative of a looseness of procedure in the case, which was decided in pre-Gault times.
But of more significance is the actual proceeding, which was of the most summary character. The probation officer introduced Mr. George B. and his wife, and appellant's grandmother, and then asked, "Have all of you been advised of your right to have an attorney?" George B. and his wife replied, "Yes." The grandmother was silent. So was the accused minor. Neither the minor nor the adult relative who had been given notice of the hearing, Mr. George B., was asked about his ability to pay for an attorney's services.
The clerk then read the essential charge of violation of Penal Code section 288, and the probation officer asked, "John, is this true," to which the reply was, "Yes, sir." The probation officer requested the petition be sustained and the court so ordered. The brother asked that the minor be allowed to live with him, but the court declined, telling the brother that appellant needed what care and education the Youth Authority could give him. The probation officer volunteered to explain the matter privately to the brother. Obviously, there was not likely to be an appeal.
The procedure itself was markedly deficient. There was no counsel for the minor. No one formally waived counsel. (In 1967 and in 1968, following the decision of In re Gault, 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], substantial amendments relating to counsel in juvenile cases were made to Welfare and Institutions Code section 634 [Stats. 1967, ch. 1355, § 4, p. 3193; Stats. 1968, ch. 1223, § 1, p. 2332] and section 700 [Stats. 1967, ch. 1355, § 10, p. 3195; Stats. 1968, ch. 1223, § 2, p. 2333]. Our holding in the present case is not based solely on lack of counsel.) There was no confrontation by a witness or witnesses. There was complete self-incrimination. No explanation of the nature of the offense was given to the minor or to his adult relative. In particular, nothing was said about *109 the requirement of specific intent, and although we by no means intend to say that it is unlikely that the offense could have been proved, nevertheless we observe, from some of the psychiatric reports that were made after the commitment, that appellant was subject to psychiatric disturbances which were associated with the death of his mother. No explanation was given of the possible consequences of the minor's confession, except a reference to the desirability of education and training which he would receive while in custody. Actually, the commitment which followed the summary proceeding became an essential ingredient of the section 1801 proceedings taken five years later. Upon uttering the words, "Yes, sir," in 1963, in reply to the probation officer's question, the minor purportedly established a necessary element of the 1968 case. As was pointed out in In re Valenzuela, 275 Cal. App.2d 483, 485 [79 Cal. Rptr. 760], the extended control procedure can be repeated as often as necessary (Welf. & Inst. Code, § 1802), thus meaning that a person could be detained in custody for the rest of his life, the original commitment being used in each biennial proceeding. (In the Valenzuela case, the court did not have to discuss the relevency of In re Gault, 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], because the offense with which Valenzuela was charged occurred before the enactment of section 1800 et seq. in 1963. [Stats. 1963, ch. 1693, § 4, p. 3323.] Wherefore, those sections were held to be ex post facto as to Valenzuela. In the case before us, the alleged offense took place a month later than the effective date of the extended control statutes.)
Each side argues the subject of retroactivity of In re Gault. Appellant contends that it is not necessary, in order to sustain his position, that we decide that Gault is retroactive, but that if it were necessary to do so, we should so declare as to commitments as distinguished from remands, a distinction discussed below. Respondent argues that it has been held in In re Harris, 67 Cal.2d 876 [64 Cal. Rptr. 319, 434 P.2d 615], that the right to counsel in juvenile proceedings does not apply to cases in this state in which the judgment became final prior to May 15, 1967, the date of the decision in Gault, and that the same rules should apply in cases involving privilege against self-incrimination and the right to confront and cross-examine witnesses. We agree with appellant that it is not necessary, for reversal, to hold that in the complete sense Gault is retroactive, when a new proceeding is commenced, such as that under section 1800, and an essential part of the case of the petitioner, Youth Authority, is an earlier valid commitment under the Juvenile Court Law. The respondent to that petition may challenge the validity of the commitment, at least on constitutional grounds, even though the order of commitment was appealable *110 (Welf. & Inst. Code, § 800) and the order has become final. The case is similar in principle to that of In re Woods, 64 Cal.2d 3 [48 Cal. Rptr. 689, 409 P.2d 913], in which the validity of prior felony convictions long since final were held subject to challenge on constitutional grounds when it was sought to make use of these convictions in determining the matter of habitual criminal statutes. It is also similar in principle to that of In re Bevill, 68 Cal.2d 854 [69 Cal. Rptr. 599, 442 P.2d 679], wherein, the conviction of a crime being prerequisite to commitment as a mentally disordered sex offender, the validity of the original conviction (although no longer the subject of appeal) could be inquired into, where the statute under which he was convicted was unconstitutional at least in part, and was inapplicable under an assumed valid portion. In Woods and in Bevill, collateral attack by habeas corpus was held permissible; in the case before us, appellant simply defended on the ground of the invalidity of the commitment.
What we find wrong with the proceedings in the case before us is not mere absence of one guarantee mentioned in the Gault case, or the presence of one objectionable action, but a combination of lack of counsel, lack of explanation of the nature of the charge, self-incrimination, absence of confrontation, absence of intelligent waiver, and failure to tell of the consequences of the minor's assent to the charge, a combination which constitutes denial of due process of law. We think it is not necessary, therefore, to dissect the Gault case and declare which parts of it might make invalid the original commitment when it is sought to give fresh effect to that commitment. It is enough when we conclude that virtually all of the essential features of due process were absent.
We do not regard the case of In re Harris, supra, 67 Cal.2d 876, to be a deterrent against reversal in this case, even if our decision be regarded as applying Gault retroactively in part. In the Harris case, the situation was more comparable to that of Kent v. United States, 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045], than that of Gault. In Kent, it was held that statutory provisions of the District of Columbia Juvenile Court Act required the presence of counsel for the waiver of juvenile court jurisdiction in favor of trial in the criminal courts. The Harris case decided that the rule of Kent (decided March 21, 1966) does not apply to cases in which the judgment became final prior to May 15, 1967, the date of the decision in Gault (67 Cal.2d at p. 879). (The date of Gault rather than that of Kent obviously was selected because the Kent case dealt with a statute of the District of Columbia, but the Gault case had to do with procedure in a state court.) In Harris, as in Kent, there was an absence of counsel in the juvenile court. But the waiver of juvenile court jurisdiction was subject to *111 review in subsequent proceedings in which the defendant was represented by counsel and the defendant had the right to counsel in the criminal proceedings; wherefore, it was reasoned that denials of right to counsel in the juvenile courts prior to remands for superior court trials have not resulted in convicting the innocent (67 Cal.2d at p. 880). But in the case before us, the juvenile court proceedings were not merely preliminary to criminal proceedings in which all of the protections afforded a defendant would have been available. The juvenile court proceedings were fully adjudicatory. They were the essential truth-finding process. It is likely, therefore, that the lack of counsel is sufficient to invalidate the proceedings. (Gideon v. Wainwright, 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733].) But, as pointed out above, there was a denial of several other fundamental rights.
The order appealed from is reversed.
Rattigan, J., and Christian, J., concurred.
Respondent's petition for a hearing by the Supreme Court was denied July 22, 1970.