[No. B039996. Second Dist., Div. Four. May 23, 1989.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ROGER ALLEN WAGNER, Real Party in Interest.

## COUNSEL

Ira Reiner, District Attorney, Donald J. Kaplan and Robert W. Carney, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Russell Iungerich, under appointment by the Court of Appeal, for Real Party in Interest.

## OPINION

**WOODS (A. M.), P. J.**—By petition for writ of mandate the People challenge a trial court order dismissing the People's statutory petition[1] to extend a convicted felon's civil commitment on a not-guilty-by-reason-of-insanity (NGI) plea. The extension petition was dismissed because real party in interest (hereafter defendant) had not been advised before entry of the 1983 NGI plea that such plea could possibly result in lifetime confinement in a

---

[1] The petition was pursuant to section 1026.5, subdivision (b), of the Penal Code. All further statutory references are to the Penal Code unless otherwise indicated.

mental health facility. Defendant had spent nearly all of his initial six-year maximum NGI commitment period in state hospital and challenged the underlying NGI plea only after the People brought their petition to extend the commitment.

The material facts are simple and not in dispute.

On March 7, 1983, defendant was arraigned on an information charging him with assault with intent to commit rape in violation of Penal Code section 220. Defendant personally entered a plea of not guilty. His counsel, the Los Angeles County Public Defender, entered an additional plea of not guilty by reason of insanity, in which defendant did not personally join.

In further proceedings in open court on March 17, 1983, defendant's counsel referred to the prior NGI plea and stated that defendant would stipulate to determination of the guilt phase on the basis of the preliminary hearing transcript and to determination of the sanity phase on the basis of psychiatric reports. Defendant assented to these submissions. The court took appropriate waivers on the guilt phase and found defendant guilty as charged. On the basis of the submitted psychiatric reports defendant was found not guilty by reason of insanity. Defendant was then advised that the maximum term for which he could be sentenced to prison on the offense was six years.

Defendant was committed to Patton State Hospital for a maximum period of six years, which term would expire December 8, 1988, unless he sooner recovered his sanity.

On September 16, 1988, the People filed a petition pursuant to section 1026.5, subdivision (b)[2] to extend defendant's commitment. The motion was based upon an April 20, 1988, letter from the acting medical director of the state hospital requesting a commitment extension. Attached to that letter is a contemporaneous hospital progress report substantiating that defendant remains a danger to others due to his diagnosed chronic paranoid schizophrenia which results in unprovoked physical attacks.

On November 8, 1988, defendant, represented by the public defender, moved to dismiss the People's petition on the ground that the 1983 NGI plea transcript shows the plea was entered without advisement of the consequence that it could result in lifetime commitment. Defendant's motion

[2]Section 1026.5, subdivision (b) authorizes two-year extensions beyond the initial NGI commitment period as long as the defendant, by reason of mental defect or disorder, "represents a substantial danger of physical harm to others." The People must file their first such petition not later than 180 days prior to termination of the initial maximum NGI commitment period.

contended that such defect compelled the setting aside of the 1983 NGI plea and commitment, thus removing the jurisdictional foundation for the People's petition to extend the commitment.

The People's opposition to the dismissal motion contended only that the motion was in reality an inappropriate petition for writ of error *coram nobis.*

On January 17, 1989, respondent granted defendant's motion to dismiss.

The People filed the petition for mandate with this court. We issued a temporary stay of the dismissal order and of defendant's release. After we issued the alternative writ, the Los Angeles County Public Defender requested that it be relieved as counsel due to the ostensible conflict of interest created by the appearance that it had been ineffective in its representation of defendant by failing to advise him of the consequences of the NGI plea and by failing to challenge the plea in a timely manner. We granted the application and appointed independent counsel for defendant in this proceeding.

As will be explained, we hold that defendant waived the defect in his 1983 NGI plea by his unexcused delay in challenging that plea until he reaped the full benefit of preferable hospital confinement and avoided the possibility of prison and attendant parole period. We also hold that even if defendant's motion to dismiss were evaluated on its merits, it fails to meet the threshold burden of proof applicable to belated collateral challenges.

### 1.   *Validity of the Plea.*

■    It is undisputed that defendant was not advised on the record before entry of the plea or before the resulting order for commitment that an NGI plea carries the adverse consequence of possible periodic extensions of the commitment that could result in lifetime confinement. Such lack of advisement has been held, on direct appeal from the resulting NGI commitment, to invalidate the plea as involuntarily entered in violation of constitutional due process. (*People* v. *Lomboy* (1981) 116 Cal.App.3d 67 [171 Cal.Rptr. 812].) The NGI plea was also entered without an advisement on the record of the initial maximum commitment period.[3]

It is not disputed that the 1983 NGI plea is defective for lack of personal entry or ratification, as is required by case law. Defendant's lack of personal

---

[3] Neither was defendant properly advised of the maximum sentence he could receive upon conviction before he submitted his underlying "slow" guilty plea on the transcript of the preliminary hearing. However, this claim was not raised below and is raised for the first time in defendant's related petition for writ of habeas corpus filed with this court on April 10, 1989. Accordingly, we will not address this defect here.

entry of the NGI plea is materially indistinguishable from that in *People* v. *Vanley* (1974) 41 Cal.App.3d 846, 850-856 [116 Cal.Rptr. 446], which held a similarly defective NGI plea defective when challenged on direct appeal.

However, it is established by case law that a defendant's substantial, unexcused delay in collaterally attacking a disposition such as an NGI commitment for lack of an advisement of consequences effects a waiver of such defect.

### 2.  *Waiver by Unexcused Delay.*

Defendant Wagner's delay in challenging his NGI plea until the consequences thereof shifted from beneficial to potentially adverse is highly analogous to the delay occurring in *In re Ronald E.* (1977) 19 Cal.3d 315 [137 Cal.Rptr. 781 [562 P.2d 684] (hereafter *Ronald E.*), in the context of juvenile law wardship proceedings. As we will explain, *Ronald E.* controls the question of waiver of the plea defect in this case.

*Ronald E., supra,* 19 Cal.3d 315, holds that although a juvenile's admission of the jurisdictional charges at his initial wardship jurisdictional hearing was defective for lack of the requisite advisement of consequences, the minor waived his entitlement to assert such defect on petition for writ of habeas corpus by his unexcused four-year delay during which his wardship was extended by four supplemental petitions.

*Ronald E.* foreclosed the juvenile's belated challenge with this analysis: "We are of the view, however, that petitioner is no longer entitled to raise on petition for the writ of habeas corpus the issue of improprieties in proceedings resulting in detention which he has accepted without timely challenge. We can only assume that petitioner was not unduly distressed by detentions in juvenile hall, in foster homes and in parental custody and that he elected to waive any constitutional defect in such detentions. . . . In view of such lack of diligence on petitioner's part we conclude that he has waived the constitutional defects he now claims in the initial wardship proceedings and proceedings pursuant to the first and second supplemental petitions. [Citation.]" (*Ronald E., supra,* 19 Cal.3d at pp. 321-322.)[4]

---

[4]Supplemental juvenile wardship petitions modify a ward's suitable placement and potentially extend wardship jurisdiction for the purposes of rehabilitation and protection of the ward. Their dependency upon the validity of the initial Welfare and Institutions Code section 602 adjudication of wardship is analogous to the dependency of Penal Code section 1026.5, subdivision (b) commitment extension petitions upon the validity of the initial NGI commitment. (Compare Welf. & Inst. Code, §§ 602 and 775 et seq. to Pen. Code, §§ 1026 and 1026.5.)

When a minor is placed in California Youth Authority (CYA), he potentially becomes subject to lifetime commitment under section 1800 et seq. of the Welfare and Institutions Code if he is periodically determined by his parole board, upon a People's petition for exten-

In *People* v. *Sumstine* (1984) 36 Cal.3d 909 [206 Cal.Rptr. 707, 687 P.2d 904], the Supreme Court recognizes that the holding of *Ronald E.* as to waivers is merely an application of the general rule barring collateral challenges that seek to avoid the penal or confinement consequences of a judgment. *Sumstine* holds that such delayed collateral challenges, which seek to invalidate a conviction for all purposes, are subject to a stricter diligence requirement than are motions to strike priors, which seek merely to preclude use of a prior conviction to enhance the sentence on a new offense.

*Sumstine, supra,* 36 Cal.3d at pages 919-920, explains the import of the above-quoted language of *Ronald E.*: "In that case [*Ronald E.*] we were not dealing with a limited objection to the use of a prior for enhancement purposes. . . . The petitioner in *Ronald E.* sought to be released on habeas corpus from detention by the Youth Authority. He was challenging the juvenile court's handling of his *Boykin/Tahl* rights not at the hearing on some previous conviction, but at the hearing on the charges for which he was currently confined. We refused to grant the writ, saying that 'petitioner is no longer entitled to raise on petition for the writ of habeas corpus the issue of improprieties in proceedings resulting in detention which he has accepted without timely challenge.' (19 Cal.3d at p. 321.) This result was not novel. We arrived at it simply by applying standard rules of habeas corpus law to petitions for habeas corpus raising *Boykin/Tahl* issues."

From the principles set forth in *Ronald E.* and *Sumstine,* we conclude that for purposes of determining waiver of entitlement to challenge the 1983 NGI plea, defendant Wagner's motion to dismiss is identical in substance and purpose to the untimely habeas corpus challenge in *Ronald E.* and is unlike a belated challenge to an enhancement prior alleged in a new prosecution.

Defendant may not rely upon his own lack of diligence to avoid the application of *Ronald E.* so long as the focus of his belated challenge is to nullify the confinement consequences flowing from the initial plea and resulting NGI commitment. To characterize his challenge as a motion to dismiss rather than a habeas corpus petition is solely one of form and will not permit him to avoid the *Ronald E.* standard.[5]

---

ded confinement, to remain physically dangerous to the public due, inter alia, to a continuing mental disorder. As in NGI extension proceedings, the committee is entitled to a jury trial and extensions are for a two-year period. (Welf. & Inst. Code, §§ 1801.5 and 1802.)

[5] We are mindful that part of the rationale of *People v. Sumstine, supra,* 36 Cal.3d 909, 919-922, is the narrower effect of the motion to strike priors and the greater prejudice to the People from a successful habeas challenge. Motions to strike seek only to prevent use of a prior felony conviction to enhance the sentence on a new conviction. But postappeal habeas petitions seek to vacate the original plea and judgment thereon for all purposes, particularly to avoid whatever confinement or other penalty flows from that conviction itself. Often the consequence of a successful habeas challenge is that the prosecution will be prejudiced in trying

Defendant Wagner argues that the early decision of *In re J.D.W.B.* (1970) 8 Cal.App.3d 103 [87 Cal.Rptr. 178], is most analogous to his situation and permits his challenge to his NGI plea under a "defensive tactic" exception to the general rule barring belated collateral challenges.

We conclude that the Court of Appeal decision in *In re J.D.W.B., supra,* does not survive the analysis of the later Supreme Court decisions *Ronald E., supra,* and *Sumstine, supra.*

*In re J.D.W.B., supra,* involved a juvenile who was adjudicated a ward of the court in 1963 upon his admission of the charges in the petition without representation by counsel or advisement of the right to counsel. Neither was the minor advised of any of his constitutional rights prior to admitting the jurisdictional allegations. His admission resulted in commitment to the CYA. In response to 1968 proceedings to extend his CYA commitment beyond age 21, which extension was dependent upon a valid prior adjudication of wardship (*In re J.D.W.B., supra,* 8 Cal.App.3d at p. 107), the juvenile challenged the 1963 wardship adjudication for lack of advisement of the right to counsel and numerous other constitutional safeguards.

The *J.D.W.B.* court held the challenge was timely under the principle, taken from *In re Woods* (1966) 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913], that a defendant may collaterally challenge by petition for habeas corpus the validity of a prior felony conviction when the prior is alleged to enhance the sentence for new offenses by qualifying the defendant as an habitual criminal. (*In re J.D.W.B., supra,* 8 Cal.App.3d at p. 110.) *In re J.D.W.B.* reasoned that because the minor challenged his initial wardship adjudication as a "defensive tactic" to preclude modification and extension of his wardship commitment by placement in CYA, the general rule barring delayed collateral challenges to convictions did not apply. (*In re J.D.W.B., supra,* at pp. 109-110.)

To the extent that *In re J.D.W.B.* is not materially distinguishable, on the basis of the total lack of waiver of counsel and lack of counsel at all stages, we hold that the *In re J.D.W.B.* application of the *In re Woods* exception

the case if the conviction is vacated after a long-delayed habeas corpus challenge to the judgment, while in the NGI context there is no retrial on the guilt phase if the NGI judgment is vacated.

The People are also substantially prejudiced in the NGI context if the defendant avoids the consequences of section 1026.5 by a tactically delayed challenge to his NGI plea. Here defendant's long delay in challenging the NGI plea would permit him to avoid both prison time (and probably the three-year parole period attendant thereto) as well as extensions of his NGI commitment, which extensions are statutorily authorized to protect the community and to restore the person to sanity. We think that such prejudice is particularly grievous in circumstances where a defendant seeks to preclude extensions without even claiming actual ignorance and lack of advisement of the plea consequences.

does not survive the holdings of *Ronald E., supra,* 19 Cal.3d at pages 321-322, and footnote 3 at pages 322-323, and *People* v. *Sumstine, supra,* 36 Cal.3d at pages 919-922.

As we explained in part 1 of this discussion, *Ronald E., supra,* 19 Cal.3d 315, at pages 321-322, squarely holds that entitlement to assert a habeas corpus challenge to a minor's initial wardship adjudication is waived by a long, unexplained acquiescence in the initial consequences of that adjudication. *Ronald E.* points out that the true purpose of the delayed collateral challenge in that case was to undermine extended wardship placement to CYA under supplemental petitions which, as in *In re J.D.W.B., supra,* are dependent upon the initial wardship adjudication. (*Ronald E., supra,* 19 Cal.3d at pp. 321-322.) Thus, *Ronald E.* implicitly rejects the *In re J.D.W.B.* holding that collateral challenges to juvenile court jurisdictional adjudications are analogous to motions to strike priors in the criminal law context for purposes of timeliness requirements. *Ronald E.* also implicitly holds that the rule applied in *In re Woods, supra,* 64 Cal.3d 3, is inapplicable to collateral challenges in juvenile law supplemental petition proceedings, at least where the minor has acquiesced in the initial jurisdiction adjudication for a substantial period.

The application by *In re J.D.W.B., supra,* of the *In re Woods* principle is also squarely repudiated in *People* v. *Sumstine, supra,* 36 Cal.3d at pages 919-921.

In pointing out the distinction between motions to strike priors to prevent their enhancement function in new criminal convictions as opposed to belated collateral habeas corpus challenges seeking to nullify all penal consequences of an initial conviction, *People* v. *Sumstine, supra,* at pages 919-920, classifies *In re Woods, supra,* 64 Cal.2d 3, as involving a motion to strike a prior to preclude its enhancement function. Accordingly, we view *Sumstine* as invalidating the *In re J.D.W.B.* application of the *In re Woods* standard in an inappropriate context. *Sumstine* also points out that the *In re Woods* rule permitting an initial challenge to an enhancement prior by habeas corpus after conviction on the subsequent offense was replaced by *People* v. *Coffey* (1967) 67 Cal.2d 204, at page 215 [60 Cal.Rptr. 457, 430 P.2d 15], which requires such challenges to be made before trial on the subsequent offense.

### 3. *No Showing of Prejudicial Error.*

A second ground requiring denial of defendant's motion to dismiss is defendant's failure to meet the burden of alleging and proving that he in fact had no knowledge of the possibility of unlimited extensions of his NGI

commitment before the 1983 NGI plea was entered and when the plea could have been challenged by direct appeal.

In addition to holding on the issue of waiver, *Ronald E., supra,* 19 Cal.3d 315, at pages 322-323, footnote 3, and 325-326, also holds that on a delayed collateral challenge seeking to invalidate an admission of wardship for lack of advisement of the consequences of the admission, a defendant must allege and show both the lack of an advisement of consequences on the record and his actual ignorance of the consequences when his admission was made.

*Ronald E.* pointed out that advisement of the consequences of a plea is required pursuant to a judicially created rule in California, rather than by constitutional compulsion and that lack of such an advisement is not prejudicial per se. Accordingly, to set aside the judgment resulting from the admission, the party asserting the belated collateral challenge must make an initial prima facie showing that he was actually ignorant of the potential consequences. (*Ronald E., supra,* 19 Cal.3d at p. 325, fn. 8.) Moreover, to demonstrate prejudice on collateral challenge the juvenile is required to show that it is reasonably probable that he might not have suffered the same disposition had he been timely advised of the potential consequences thereof. The minor failed to make the requisite allegations or evidentiary showing and the habeas corpus petition was denied on the merits. (At pp. 325-326.)

The record provided in this mandate proceeding shows that defendant's motion to dismiss satisfies none of the *Ronald E.* requirements. The motion relies exclusively upon the face of the record and contains no allegations of lack of advisement by counsel or actual ignorance. Neither does it contain any allegation or evidence showing that defendant would not have entered the 1983 NGI plea had the advisement of potential extensions been given on the record. Accordingly, he was not entitled to dismissal of the People's application for an extension of the commitment nor was he entitled to set aside the 1983 NGI plea by such motion or by a similar contemporaneous habeas petition.[6]

Even if defendant's motion to dismiss were treated as a motion to strike an alleged enhancement prior, the same burden of pleading and of proof that he had no actual advisement by counsel or knowledge of the potential consequences of the NGI plea would apply and require denial of defendant's motion below. (*People* v. *Sumstine, supra,* 36 Cal.3d at pp. 919-922.)[7]

---

[6]Defendant did file a petition for writ of habeas corpus, No. B041229, with this court on April 10, 1989, concurrently with his return to the alternative writ in this mandate proceeding. Although the case authority and analysis set forth in this decision has similar application to the habeas petition, we will determine that habeas petition later by separate disposition.

[7]Neither are we persuaded by *People* v. *McIntyre* (1989) 209 Cal.App.3d 548 [257 Cal.Rptr. 271] which, at footnote 13, summarily rejects, without analysis, a similar timeli-

CONCLUSION

Let a peremptory writ of mandate issue directing respondent to vacate its order of January 17, 1989, which granted defendant's motion to dismiss the People's petition for extension of the NGI commitment, and to make a new and different order denying defendant's motion and reinstating proceedings on the People's petition for extension.

It is further ordered that the temporary stay issued herein on February 22, 1989, shall remain in effect until respondent complies with our direction.

McClosky, J., and George, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied September 6, 1989.

---

ness/waiver argument made by the People in support of NGI extension proceedings. In *McIntyre* the NGI committee was not advised on the record of the possibility of extensions when entering an NGI plea bargain in 1980. He appealed the extension order and challenged the initial NGI commitment on habeas corpus.

Contrary to the holdings of *Ronald E., supra,* or *Sumstine, supra, McIntyre* assumes that the People have the burden of overcoming a presumption that there was no advisement and no actual knowledge of the possibility of commitment extensions in these long-delayed collateral attacks upon pleas. *McIntyre*'s footnote suggests that even if the NGI committee is shown to have had such knowledge, he is presumed to have believed the law would not apply to him.

In any event, the "subjective disbelief" rationale of *McIntyre*'s footnote 13 cannot apply here. There, the maximum NGI confinement period was an express provision of the personalized formal plea bargain; here, there was no plea bargain and defendant was told that his maximum prison term would have been six years.