#26782-aff in pt, rev in pt & rem-SLZ

**2014 S.D. 24**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                     Plaintiff and Appellee,

   v.

WAYNE BILBEN,                              Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE WARREN G. JOHNSON
Judge

* * * *

MARTY J. JACKLEY
Attorney General

PAUL S. SWEDLUND
Assistant Attorney General
Pierre, South Dakota                       Attorneys for plaintiff
                                           and appellee.


MATTHEW J. KINNEY
Spearfish, South Dakota                    Attorney for defendant
                                           and appellant.


* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 18, 2014

OPINION FILED **04/23/14**

#26782

ZINTER, Justice

[¶1.]        In 2012, Wayne Bilben was charged with driving under the influence of alcohol.  A part II information alleged that he had three prior DUI convictions within the last ten years (in 2003, 2004, and 2007).  Bilben moved to strike the prior convictions.  He claimed that he pleaded guilty to the prior DUI charges without adequate *Boykin* advisements, rendering the prior convictions invalid.  The circuit court denied his motion.  On appeal, Bilben withdraws his challenge to his 2004 conviction, but continues to challenge the validity of his 2003 and 2007 convictions.  We affirm in part, reverse in part, and remand for resentencing.

*Facts and Procedural History*

[¶2.]        In 2003, Bilben was charged with DUI.  At a change-of-plea hearing, the court simultaneously advised all defendants present of their rights, including their *Boykin* rights: their right to a jury trial, their right to confront their accusers, and their privilege against compulsory self-incrimination.  *See Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).  The court then advised that a guilty plea would "give up [their] right to a jury trial and all rights that accompany a jury trial."  The court also canvassed Bilben individually to ensure that he understood those rights.

> **Court:**  All right.  [Defense Counsel], have you discussed with your client his statutory and constitutional rights and maximum penalties?
>
> **Defense Counsel:**  I have, your Honor.  And I understand he was present today, and he heard them before.  And I believe he understands them; is that correct?
>
> **Bilben:**  Yes.
>
> **Court:**  Mr. Bilben, you understand your rights?
>
> **Bilben:**  Yes.

> **Court:** You've been in court at least on two occasions when your rights have been given to you.
>
> **Bilben:** Yes.
>
> **Court:** Do you understand your rights?
>
> **Bilben:** Yes, sir.
>
> **Court:** Okay. Have there been any threats or promises made to you, other than this plea agreement that's been discussed in court, to get you to enter a plea of guilty to this charge.
>
> **Bilben:** No, sir.

Bilben then pleaded guilty to the 2003 DUI charge.

[¶3.]     In 2006, Bilben was charged with another DUI. At his plea hearing, he was advised by that court of his rights, including his *Boykin* rights. However, Bilben was not advised that a guilty plea would waive his *Boykin* rights.[1] He pleaded guilty, and his conviction was entered in 2007.

[¶4.]     In 2013, Bilben was charged with the DUI that precipitated this appeal. Before trial, Bilben moved to strike his 2003 and 2007 convictions from the part II information. He claimed that his 2003 and 2007 convictions were constitutionally invalid because he pleaded to each charge without an adequate *Boykin* advisement. The circuit court denied the motion. Following a court trial, Bilben was convicted of the 2013 DUI charge, and the court imposed an enhanced sentence based on the prior convictions. Bilben appeals.[2]

---

1.    With respect to the consequences of pleading guilty, the court only advised: "So you are going to get rid of the charge simply by pleading to it and let me decide what happens after listening to the [S]tate and you and [Defense Counsel] tell me what you respectively think."

2.    Because the facts concerning Bilben's 2003 and 2007 *Boykin* advisements are not in dispute, we only review the circuit court's conclusions of law. We

(continued . . .)

*Decision*

[¶5.]        *Boykin* requires that before a defendant pleads guilty, he "be advised of his [federal constitutional] rights relating to self-incrimination, trial by jury, and confrontation," and "that [he] intentionally relinquish or abandon known rights." *State v. Smith*, 2013 S.D. 79, ¶ 8, 840 N.W.2d 117, 120 (quoting *Monette v. Weber*, 2009 S.D. 77, ¶ 10, 771 N.W.2d 920, 924 (citing *Boykin*, 395 U.S. at 243 n.5, 89 S. Ct. at 1712 n.5)).  Bilben argues that the 2003 and 2007 courts failed to adequately advise him that if he pleaded guilty, he would waive his *Boykin* rights.  Therefore, Bilben contends that his prior convictions were constitutionally invalid and his 2013 case should be remanded for resentencing without consideration of the 2003 and 2007 convictions.

[¶6.]        Regarding the 2003 conviction, Bilben claims that the court only advised him that a guilty plea would waive his right to a jury trial.  Bilben contends he was not advised that he would also waive his privilege against self-incrimination and his right to confront his accusers.  We disagree.

[¶7.]        Shortly after fully advising Bilben of all three *Boykin* rights, the 2003 court advised Bilben that by pleading guilty, he would "give up [his] right to a jury trial *and all* rights that accompany a jury trial."  (Emphasis added.)  Bilben's right against compulsory self-incrimination and right of confrontation are rights that accompanied his right to a jury trial.  Therefore, Bilben was advised that by pleading guilty, he would waive all three *Boykin* rights.  Indeed, we recently upheld

_____

(. . . continued)
        review conclusions of law de novo.  *Rosen v. Weber*, 2012 S.D. 15, ¶ 7, 810
        N.W.2d 763, 765 (citation omitted).

a similar general waiver advisement that referenced previously enumerated *Boykin* rights. *See Smith*, 2013 S.D. 79, ¶ 18, 840 N.W.2d at 124 (approving a general waiver advisement indicating that "by pleading guilty, you give up all the rights I just read").

[¶8.]     Bilben, however, argues that *Rosen v. Weber*, 2012 S.D. 15, 810 N.W.2d 763, requires the court to specifically ask "whether [a defendant] kn[ows] he [is] waiving [the three *Boykin*] rights" by pleading guilty. *Rosen* does not demand that type of specific questioning. Bilben takes phrases of *Rosen* out of context and overlooks long-standing precedent rejecting such formulaic *Boykin* advisements.

[¶9.]     In *Rosen*, the plea-taking court only advised the defendant that by pleading guilty, he would waive his "rights to a trial[.]" *See id.* ¶ 3 n.1. Further, the plea-taking court in *Rosen*, unlike the plea-taking court in *Smith*, did not advise that a guilty plea would waive previously enumerated rights. Thus, we noted that there could be no "effective waiver of federal constitutional rights," as "one must ask how a pleading defendant could have knowingly and voluntarily waived [all] *Boykin* rights when that defendant was never advised that those rights would be waived by pleading guilty." *Id.* ¶¶ 9, 13 (citation omitted).

[¶10.]     Unlike the defendant in *Rosen*, Bilben was advised that a guilty plea would waive all previously enumerated rights associated with a trial, which included all three *Boykin* rights. Therefore, by his guilty plea, Bilben made a knowing decision to waive his *Boykin* rights.

[¶11.]     Bilben's argument fails to recognize that "*Boykin* 'does not require the recitation of a formula by rote or the spelling out of every detail by the trial court[.]'"

*Monette*, 2009 S.D. 77, ¶ 11, 771 N.W.2d at 925 (quoting *Nachtigall v. Erickson*, 85 S.D. 122, 128, 178 N.W.2d 198, 201 (1970)). Instead, on review, if the record reflects that a *Boykin* canvassing occurred, we require only that "the record *in some manner* shows the defendant entered his plea understandingly and voluntarily." *See Quist v. Leapley*, 486 N.W.2d 265, 267 (S.D. 1992) (quoting *Logan v. Solem*, 406 N.W.2d 714, 717 (S.D. 1987)); *see also Monette*, 2009 S.D. 77, ¶ 11, 771 N.W.2d at 925.

[¶12.] Here, the record reflects that the 2003 court fully advised Bilben of his *Boykin* rights. The court then gave him a general waiver advisement, similar to the one approved in *Smith*. And significantly, Bilben makes no claim that, under the totality of the circumstances, his plea was unknowing or involuntary. Therefore, the circuit court did not err in denying Bilben's motion to strike his 2003 conviction.

[¶13.] Unlike the 2003 record, the 2007 record does not reflect that Bilben was advised that a guilty plea would waive his *Boykin* rights. The record indicates that the 2007 court failed to give any waiver advisement. "Failing 'to canvass [a defendant] regarding a waiver of his [or her] *Boykin* rights invalidates [the] guilty plea even under our less intense' collateral attack standard of review." *Smith*, 2013 S.D. 79, ¶ 8, 840 N.W.2d at 120 (alterations in original) (quoting *Rosen*, 2012 S.D. 15, ¶ 10, 810 N.W.2d at 766).

[¶14.] The State, however, contends that the 2007 advisement was sufficient under the totality of the circumstances. We disagree. "In the [complete] absence of a *Boykin* canvassing, a 'critical step' is missing and the reviewing court does 'not consider the additional factors under the totality of the circumstances analysis.'" *Rosen*, 2012 S.D. 15, ¶ 11, 810 N.W.2d at 766 (quoting *Monette*, 2009 S.D. 77, ¶ 16,

771 N.W.2d at 926-27). Because there was a complete absence of any *Boykin* waiver advisement in the 2007 case, we do not apply the totality-of-the-circumstances analysis.

[¶15.]     The State also contends that under *State v. Jensen*, 2011 S.D. 32, 800 N.W.2d 359, Bilben is not entitled to relief unless he can show that he was prejudiced by the 2007 court's failure to advise him that he would waive his *Boykin* rights by entering a guilty plea. *Jensen* does not require a showing of prejudice for *Boykin* violations.

[¶16.]     In *Jensen*, the defendant contended that his guilty plea was invalid on two grounds: a statutory violation of SDCL chapter 23A-7 requiring certain advisements and a constitutional violation for failing to provide a *Boykin* advisement. *See id.* ¶¶ 10, 13. The State's prejudice argument comes from *Jensen's* discussion of statutory violations of chapter 23A-7. In *Jensen*, we explained that "[t]he United States Constitution does not mandate that courts follow the procedure embodied in chapter 23A-7." *Id.* ¶ 11 (citation omitted). Therefore, "[b]ecause failure to follow the [chapter 23A-7] procedure is not a constitutional defect, a collateral attack on a predicate conviction on that basis is only proper for our consideration if a defendant can demonstrate prejudice." *Id.* (citation omitted). But *Jensen* did not extend the prejudice requirement to constitutional defects based on *Boykin*. *See id.* ¶¶ 13-16.

[¶17.]     Because Bilben established a constitutional defect based on *Boykin*, Bilben was not required to make a showing of prejudice. *See id.*; *see also Smith*, 2013 S.D. 79, 840 N.W.2d 117 (discussing collateral attack of prior conviction based

on a claimed *Boykin* violation, without requiring a showing of prejudice). And because the lack of "an effective waiver of [*Boykin*] rights[] renders the plea unconstitutional[,]" the circuit court erred in denying Bilben's motion to strike his 2007 conviction. *See Monette*, 2009 S.D. 77, ¶ 14, 771 N.W.2d at 926 (citing *Boykin*, 395 U.S. at 243, 89 S. Ct. at 1712).

[¶18.]     The dissent presents thought-provoking arguments for reexamining the statutory and constitutional underpinnings that govern collateral attacks on predicate convictions used for sentencing enhancement. Although the United States Supreme Court and some states have adopted the dissent's argument, we must wait for another day to consider the matter. The dissent's argument was neither presented below nor briefed on appeal. Therefore, it would be imprudent for us to consider it *sua sponte*. Bypassing the adversarial process today could result in just as significant an oversight as the dissent argues occurred in *State v. King*, 383 N.W.2d 854 (S.D. 1986), and our cases since *Custis v. United States*, 511 U.S. 485, 114 S. Ct. 1732, 128 L. Ed. 2d 517 (1994).

[¶19.]     The dissent also presents a compelling argument that our case law, addressing alleged *Boykin* violations, has incorrectly strayed from a totality-of-the-circumstances analysis toward the two-step approach applied in *Rosen* and *Monette*. *See Rosen*, 2012 S.D. 15, ¶ 11, 810 N.W.2d at 766; *Monette*, 2009 S.D. 77, ¶ 16, 771 N.W.2d at 926-27. But again, we must wait for another day to address this matter. Although the State mentions the totality of the circumstances as a basis to uphold Bilben's 2007 conviction, the State has not asked us to reconsider our case law declining to apply totality analysis when no waiver advisement has been given.

Consequently, we adhere to our precedent today, awaiting a proper case in which we can also consider the arguments against the positions argued by the dissent.

[¶20.] Affirmed in part, reversed in part, and remanded for resentencing without consideration of the 2007 conviction.

[¶21.] KONENKAMP and WILBUR, Justices, concur.

[¶22.] GILBERTSON, Chief Justice, and SEVERSON, Justice, dissent.

GILBERTSON, Chief Justice (dissenting).

[¶23.] I dissent. The procedure used by Bilben—a collateral attack on the validity of a predicate conviction used for enhancement purposes—is a judicial construct. Unlike direct appeal, it is not codified by our Legislature. *See* SDCL 23A-32-2 (codifying right to appeal from a final judgment of conviction). Unlike a petition for habeas corpus, it is neither a remedy "antecedent to statute" nor "an integral part of our common-law heritage." *Rasul v. Bush*, 542 U.S. 466, 473-74, 124 S. Ct. 2686, 2692, 159 L. Ed. 2d 548 (2004). *See also* SDCL 21-27-1 (codifying habeas relief). Unlike direct appeal and habeas, this form of attack on the validity of a conviction is currently unrestrained by considerations of the finality of judgment. *See* SDCL 21-27-3.3 (placing two-year statute of limitations upon habeas appeals); SDCL 23A-32-15 (requiring direct appeals to be taken within thirty days). *But see King*, 383 N.W.2d at 856 (holding that a motion to strike is a proper vehicle to raise a collateral attack on a predicate conviction "*whenever* it is used as a basis for augmenting punishment") (emphasis added) (quoting *In re Rogers*, 619 P.2d 415,

417 (Cal. 1980)). It is time to re-evaluate whether the courts of this State should entertain this form of unrestrained collateral attack.

[¶24.]     In the posture presented in this case, the remedy first seems to have appeared in *State v. King*. In *King*, this Court determined that "a motion to strike is the proper vehicle for attacking such a constitutionally infirm conviction." *Id.* at 856-57 (citing *In re Rogers*, 619 P.2d at 417). In setting forth this rule, the Court did not rely on statutory interpretation of South Dakota law. *See id.* Nor did the Court point to the common law as recognizing such a remedy. Instead, the Court adopted a blanket rule from California that this special type of collateral attack on predicate convictions was required to be allowed at any time, apparently under the theory of due process considerations.[3] *See id.* (citing *In re Rogers*, 619 P.2d at 417).

[¶25.]     In *King*, the Court adopted a very broad rule, despite assertions that this type of collateral attack should be confined to use in a very narrowly-defined category of cases. The State specifically argued in *King* that only convictions resulting from uncounseled guilty pleas were constitutionally infirm for enhancement purposes, and thus collateral attacks alleging other constitutional deficiencies should not be entertained. *Id.* (citing *Burgett v. Texas*, 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967)). This argument was credible, considering the

---

3.     *King* also noted "a constitutionally infirm conviction cannot be used to enhance the sentence under our habitual offender statutes." *Id.* (citing *Application of Garritsen*, 376 N.W.2d 575 (S.D. 1985)). Although *King* cites to *Garritsen*, *Garritsen* was brought as a habeas proceeding, a procedure recognized in the common law. *Garritsen*, 376 N.W.2d at 576. Furthermore, *Garritsen* simply declared that a constitutionally infirm prior guilty plea "could not stand," without citing any authority as to the proper procedure for vacating such a plea or the constitutional necessity of allowing a collateral attack. *See id.* at 578.

rule adopted by the Court in *King* arose from a line of California court *Gideon*-based challenges.[4] However, the Court rejected that argument, stating that the cited United States Supreme Court cases on point, including *Burgett v. Texas*[5] and *Lewis v. United States*[6], did not mention limiting collateral attacks of constitutionally infirm predicate offenses to only uncounseled predicate offenses. *King*, 383 N.W.2d at 857. From *King* forward, our case law has followed this rule, allowing a defendant to collaterally attack any allegedly constitutionally-infirm predicate conviction used for sentence enhancement. However, the United States Supreme Court later addressed the issue raised by the State in *King*, and ruled directly to the contrary, in favor of the State's position.

[¶26.] The defendant in *Custis v. United States* challenged the use of prior convictions to enhance sentencing on federal drug and firearm charges brought against him. 511 U.S. 485, 114 S. Ct. 1732. Like Bilben, Custis alleged that the guilty plea in one of his prior convictions was not knowingly and intelligently entered. *Id.* at 488, 114 S. Ct. at 1734. Because the conviction was therefore attained in violation of *Boykin*, Custis argued that the constitutional infirmity should prevent that conviction from being used for sentence-enhancement purposes. *Id.* The lower courts held that the federal statute under which Custis was convicted

---

4.   *See In re Rogers*, 619 P.2d at 417 (citing *In re Woods*, 409 P.2d 913 (Cal. 1966); *In re Luce*, 409 P.2d 918 (Cal. 1966); *In re Tucker*, 409 P.2d 921 (Cal. 1966)) (citations omitted). The nature of those challenges should have made the rule unique to that setting, because *Gideon* was applied "retrospectively without regard to time." *In re Woods*, 409 P.2d at 916.

5.   389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967).

6.   445 U.S. 55, 100 S. Ct. 915, 63 L. Ed. 2d 198 (1980).

did not authorized a procedure by which Custis could collaterally attack the constitutionality of his predicate convictions, and therefore refused to entertain his collateral challenge. *Id.* at 489, 114 S. Ct. at 1735.

[¶27.]      On appeal to the United States Supreme Court, Custis argued that the United States Constitution required some procedural avenue through which to challenge the constitutionality of his prior convictions when used for sentence enhancement. *Id.* at 490, 114 S. Ct. at 1735. The United States Supreme Court explicitly rejected this argument, holding that only the "unique constitutional defect" of failure to appoint counsel would allow for a collateral challenge of a predicate conviction in a sentence enhancement setting. *Id.* at 496-97, 114 S. Ct. at 1738-39. In reaching its decision, the Supreme Court reasoned:

> As we have explained, "[i]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures" and inevitably delay and impair the orderly administration of justice. *United States v. Addonizio,* 442 U.S. 178, 184, n.11, 99 S. Ct. 2235, 2240, n.11, 60 L. Ed. 2d 805 (1979). We later noted in *Parke v. Raley,* 506 U.S. 20, 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992), that principles of finality associated with habeas corpus actions apply with at least equal force when a defendant seeks to attack a previous conviction used for sentencing. By challenging the previous conviction, the defendant is asking a district court "to deprive [the] [state-court judgment] of [its] normal force and effect in a proceeding that ha[s] an independent purpose other than to overturn the prior judgmen[t]." *Id.* at 30, 113 S. Ct. at 523. These principles bear extra weight in cases in which the prior convictions, such as one challenged by Custis, are based on guilty pleas, because when a guilty plea is at issue, "the concern with finality served by the limitation on collateral attack has special force." *United States v. Timmreck,* 441 U.S. 780, 784, 99 S. Ct. 2085, 2087, 60 L. Ed. 2d 634 (1979) (footnote omitted).

*Id.* at 497, 114 S. Ct. at 1739.

[¶28.]     In *King* we cited *Lewis* as supporting the proposition that "when the subsequent punishment depends upon the reliability of the former conviction, it becomes constitutionally infirm." *King*, 383 N.W.2d at 857. However, in *Custis*, the Supreme Court stated that *Lewis* "point[s] strongly to the conclusion that Congress did not intend to permit collateral attacks on prior convictions" based on the language of the enhancement statute, and went on to reject the defendant's contention that the United States Constitution required allowing such an attack. 511 U.S. at 493, 114 S. Ct. at 1737 (citation omitted). The Supreme Court thereby clarified that even if a prior conviction clearly suffered from constitutional infirmity other than deprivation of right to counsel,[7] the United States Constitution does not give the defendant the right to challenge the alleged infirmity in a later enhanced-sentence proceeding.

[¶29.]     Our penalty enhancement statutes impose no greater statutory burden of proving the validity of a prior conviction than the federal law at issue in *Custis* or *Lewis*.[8] Nor do our enhanced-penalty statutes provide a procedure for attacking the

---

7.     The United States Supreme Court further curtailed the ability to raise such a collateral attack in *Nichols v. United States*, where the Court clarified that an uncounseled misdemeanor conviction may also be used for enhancement purposes, so long as no prison term was imposed for the misdemeanor conviction. 511 U.S. 738, 748-49, 114 S. Ct. 1921, 1928, 128 L. Ed. 2d 745 (1994).

8.     *Compare* SDCL 32-23-4.6 (imposing enhanced penalty for fourth DUI conviction "[i]f conviction for a violation of [SDCL] 32-23-1 is for a fourth offense"), *and* SDCL 22-7-7 (imposing enhanced penalty "[i]f a defendant has been convicted of one or two prior felonies under the laws of this state or any other state or the United States"), *with Custis*, 511 U.S. at 490-91, 114 S. Ct. at 1735-36 (examining federal statute requiring enhanced punishment for any person who "has three previous convictions by any [enumerated court] for

(continued . . .)

validity of predicate convictions when used for sentence enhancement. *But see Custis*, 511 U.S. at 491, 114 S. Ct at 1736 (recognizing that some federal repeat offender laws set forth specific procedures for challenging the validity of a prior conviction used for enhancement purposes). Like the defendant in *Custis*, Bilben has already been afforded due process of law. He had opportunities to challenge the constitutional validity of his prior conviction on direct appeal and through habeas relief. Yet now, many years after the timeframe contemplated by the Legislature within which to bring statutorily-recognized challenges, Bilben is allowed to attack his conviction. As was a concern with the United States Supreme Court, the type of delayed attack exhibited in this case forces circuit courts and this Court to "rummage through frequently nonexistent or difficult to obtain [records] that may date from another era, and may come from any of the 50 States." *Id.* at 496, 114 S. Ct. at 1738.

[¶30.] A number of states have followed the constitutional analysis and policy considerations in *Custis* and recognized that constitutional considerations do not require courts to entertain collateral attacks on prior convictions used for enhancement purposes unless the defendant claims the predicate conviction was uncounseled. *See, e.g., State v. Weber*, 90 P.3d 314 (Idaho 2004); *State v. Veikoso*, 74 P.3d 575 (Haw. 2003); *State v. Hahn*, 618 N.W.2d 528 (Wis. 2000); *State v. Mund*, 593 N.W.2d 760 (N.D. 1999); *State v. Chiles*, 917 P.2d 866 (Kan. 1996); *State v.*

---

(. . . continued)
> a violent felony or serious drug offense"), *and Lewis*, 445 U.S. at 60, 100 S. Ct. at 918 (interpreting 18 U.S.C. § 1202(a)(1), which was aimed at any person who "has been convicted by a court of the United States or of a State . . . of a felony").

*Janes*, 684 A.2d 499 (N.H. 1996); *McGuire v. Commonwealth*, 885 S.W.2d 931 (Ky. 1994), *People v. Carpentier*, 521 N.W.2d 195 (Mich. 1994). Some states have examined *Custis* and explicitly declined to adopt the reasoning based on an interpretation that the state's constitution offers greater protection than that afforded by the federal Constitution. *See, e.g.*, *State v. Maine*, 255 P.3d 64, 72-73 (Mont. 2011) (allowing collateral attacks under interpretation of the Montana constitution); *Paschall v. State*, 8 P.3d 851 (Nev. 2000) (declining to bar collateral attack because *Custis* "merely established the floor for federal constitutional purposes"); *State v. LeGrand*, 541 N.W.2d 380 (Neb. 1995), *overruled by State v. Louthan*, 595 N.W.2d 917 (Neb. 1999). This Court has not addressed the issue.

[¶31.] Although we acknowledge that this Court has the ability to grant greater protection under the South Dakota Constitution than is afforded under the United States Constitution, we have stated that to do so is a "significant undertaking." *Gilbert v. Flandreau Santee Sioux Tribe*, 2006 S.D. 109, ¶ 23, 725 N.W.2d 249, 258 (citation omitted). When counsel have directly asserted "that essentially identical language in our Constitution means something different than the United States Constitution[,]" Justice Zinter has called on them to "present some interpretive methodology that leads to principled constitutional interpretation[.]" *State v. Schwartz*, 2004 S.D. 123, ¶ 30, 689 N.W.2d 430, 437 (Zinter, J., concurring). It has been noted that "[a]uthoritative and neutral analysis of South Dakota's Constitution cannot advance from episodic and reactionary borrowing of results from other state courts." *Id.* at ¶ 57 (Konenkamp, J., concurring). "[W]e cannot simply assume that our Constitution mandates greater

protections than those available under the Federal Constitution." *Id.* at ¶ 31 (Konenkamp, J., concurring).

[¶32.]     Despite this cautionary guidance about divergent protection granted under State and federal constitutions, we have continued offering greater protection than that granted by the United States Constitution.  We have done so without sound judicial interpretation as to why under due process concerns of the South Dakota Constitution defendants are allowed to raise these collateral attacks, when they are not given that protection under the United States Constitution.  This is especially concerning, considering as the Nebraska Supreme Court noted, that allowing these special collateral attacks in enhanced-sentencing proceedings "is inconsistent with limitations which our law places upon collateral attack of criminal convictions under other circumstances." *Louthan*, 595 N.W.2d at 926.  I find no compelling reason why an inmate on death row has two years in which to bring a habeas challenge to his conviction,[9] but someone in Bilben's position is granted the right to bring a challenge in perpetuity.

[¶33.]     Our judiciary and the South Dakota citizens whose rights and liberties we have pledged to protect have a deeply-rooted interest in the finality of criminal judgments.  As we have stated, "[o]ne of the law's very objects is the finality of its judgments.  Neither innocence nor just punishment can be vindicated until the final judgment is known.  Without finality, the criminal law is deprived of much of its deterrent effect." *State v. Moeller*, 511 N.W.2d 803, 808 (S.D. 1994) (quoting *McCleskey v. Zant,* 499 U.S. 467, 491, 111 S. Ct. 1454, 1468, 113 L. Ed. 2d 517, 542

---

9.     SDCL 21-27-3.3.

(1991)). "Moreover, in addition to undermining confidence in the integrity of court procedures, these inroads on finality increase the volume of judicial work, inevitably delaying and impairing the orderly administration of justice . . . which directly contravenes one of the ends of *Boykin,* to wit: to 'forestall the spin-off of collateral proceedings that seek to probe murky memories.'" *Id.* (citation omitted).[10]

[¶34.] Because the right to collaterally attack a prior conviction used for sentence enhancement is not required by the United States Constitution and serves to undermine the finality of judgments of the courts of this State, I urge this Court to seriously reconsider the wisdom of allowing the sort of unrestrained collateral attack brought by Bilben in this case. We should not continue to undermine the finality of judgments in this State, nor continue utilizing precious judicial resources on these collateral attacks without a clear interpretation why our State

---

10.   *See also Lackawanna Cnty. Dist. Attorney v. Coss,* 532 U.S. 394, 403, 121 S. Ct. 1567, 1573-74, 149 L. Ed. 2d 608 (2001). The United States Supreme Court noted:

> As we said in *Daniels,* "[t]hese vehicles for review . . . are not available indefinitely and without limitation." A defendant may choose not to seek review of his conviction within the prescribed time. Or he may seek review and not prevail, either because he did not comply with procedural rules or because he failed to prove a constitutional violation. In each of these situations, the defendant's conviction becomes final and the State that secured the conviction obtains a strong interest in preserving the integrity of the judgment. Other jurisdictions acquire an interest as well, as they may then use that conviction for their own recidivist sentencing purposes, relying on "the 'presumption of regularity' that attaches to final judgments."

*Id.* (citations omitted).

Constitution offers greater protection in this area than the Due Process Clause of the United States Constitution.

[¶35.]     To exacerbate the problem created by our expanded notion of the right to collaterally attack a predicate conviction, the Court today also follows the recent direction taken by this Court, away from a totality-of-the-circumstances review of guilty pleas and toward a two-step approach developed in *Monette* and *Rosen*. Under the Court's approach, "[i]n the complete absence of a *Boykin* canvassing, a 'critical step' is missing" and the Court does not analyze the situation under the totality of the circumstances. As was one of my stated concerns in *Rosen*, this approach threatens to place form over substance, creating an analytical framework where we require "the recitation of a formula by rote or the spelling out of every detail by the trial court" in order to find a guilty plea knowing and voluntary. *Rosen*, 2012 S.D. 15, ¶ 22, 810 N.W.2d at 768 (Gilbertson, C.J., dissenting) (quoting *Monette*, 2009 S.D. 77, ¶ 11, 771 N.W.2d at 925).

[¶36.]     Prior to *Monette*, we looked to the totality of the circumstances surrounding a guilty plea to determine whether a plea was entered knowingly and intelligently. *See, e.g.*, *State v. Apple*, 2008 S.D. 120, ¶ 12, 759 N.W.2d 283, 288; *State v. Goodwin*, 2004 S.D. 75, ¶ 11, 681 N.W.2d 847, 852; *State v. Lashwood*, 384 N.W.2d 319, 321 (S.D. 1986). Under the totality of the circumstances, "[i]n addition to the procedure and in-court colloquy, we look at other factors including 'the defendant's age; his prior criminal record; whether he is represented by counsel; the existence of a plea agreement; and the time between advisement of rights and entering a plea of guilty.'" *Monette,* 2009 S.D. 77, ¶ 12, 771 N.W.2d at 925 (quoting

*Apple*, 2008 S.D. 120, ¶ 14, 759 N.W.2d at 288). The Court's test severely narrows this review of the record, instead focusing solely upon the words recited by the judge. The result is essentially a per se rule: if the judge only stated x and y, but not z, *then as a matter of law*, the plea could not have been intelligently and voluntarily made, no matter the defendant's actual knowledge and experience.[11]

[¶37.]     In a habeas action the petitioner "carries the burden of proving an involuntary plea and that his rights were violated." *See Monette*, 2009 S.D. 77, ¶ 16, 771 N.W.2d at 926. Yet, in this judicially-created form of collateral attack brought by Bilben, the defendant can now prevail by alleging that the judge failed to utter specific advisements, regardless of the surrounding circumstances and without claiming actual coercion or misunderstanding or ignorance of the rights being waived. Our primary concern should not be whether the circuit court recited a rote formula or spelled out every detail of Bilben's rights. *Id.* ¶ 11, 771 N.W.2d at 925. Rather, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Raley*, 506 U.S. at 29, 113 S. Ct. at 523 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)). The entirety of the record indicates that such a choice was presented to Bilben in this case.

---

11.    Under this test, for example, if a criminal defense attorney with decades of experience were to plead guilty to a crime, but the judge didn't explain to him on the record that pleading guilty waived his *Boykin* rights, the validity of the plea could be challenged, years later, as having not been entered "knowingly."

[¶38.]     The record in this case reflects, not just *"in some manner"*[12] but in many ways, that Bilben's plea was a voluntary and intelligent choice among the alternative courses of action available.  The Court concedes that Bilben was advised of all the pertinent rights, but determines that there was a "complete absence of any *Boykin* canvassing" because the judge did not tell Bilben directly that pleading guilty would result in waiving those rights.  However, the manner in which the judge explained the rights indicated that alternative courses of action were open to Bilben, each with rights and consequences.  Majority Opinion ¶ 14.

[¶39.]     The judge first informed Bilben that he had a right to a jury trial.  The judge then informed Bilben that "At the trial, you have a right to remain silent" and to "confront your accusers."  Although the judge did not use the word "waive," the rights available at trial were prefaced with the phrase "At the trial[.]"  The judge then placed the two options before Bilben: he could plead guilty, or have a trial.  Because the *Boykin* rights were prefaced by the phrase "At trial," Bilben should have understood that he would not get those rights if he pleaded guilty—the choice presented to Bilben as the alternative to trial.[13]  Thus, even under the Court's narrow review of the record, the colloquy satisfies *Boykin's* requirement that "the

---

12.    Majority Opinion ¶ 11 (citations omitted).

13.    The advisement in this case was similar to those in *Jones v. State*, 479 N.E.2d 539 (Ind. 1985) and *Dewitt v. State*, 755 N.E.2d 167 (Ind. 2001).  In both cases, the Indiana Supreme Court upheld the validity of a guilty plea where the court failed to mention that pleading guilty would waive certain *Boykin* rights, but the court prefaced the rights with the phrases "in a trial" or "if you proceed to trial."

plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Raley*, 506 U.S. at 29, 113 S. Ct. at 523.

[¶40.]     Beyond the words spoken by the judge, the totality of the circumstances strengthens the conclusion that Bilben voluntarily and intelligently waived his rights when he pleaded guilty. Had Bilben been a first time offender, unrepresented by counsel, one may question whether Bilben would have understood from the advisement that he did not get the rights available at trial if he pleaded guilty. However, the record reflects that Bilben was familiar with the court system. The 2007 conviction was Bilben's third time before the court on DUI charges in approximately five years. At the very beginning of the plea hearing, Bilben acknowledged that he had been in front of the court too many times in too short a period of time. More specifically, he was familiar with pleading guilty. He had done it in the past and experienced the consequences. The record also reflects that Bilben was represented by an attorney. The record reflects that Bilben took time, off the record to discuss the plea with his attorney before entering the plea.

[¶41.]     It is telling in this case that Bilben does not claim on appeal that he was actually coerced or misunderstood his rights prior to pleading guilty in his 2007 conviction. The totality of the circumstances, including the advisement of rights given to Bilben, his past experience with the court system, and the fact that he was represented by an attorney, all support the conclusion that Bilben knew the nature of his rights and the consequences of his guilty plea, including waiver of certain rights. However, the Court takes too narrow a view of the proceedings and incorrectly determines Bilben's 2007 conviction to be invalid based on *Boykin*. For

this reason, and because Bilben has no constitutional or statutory right to collaterally attack a predicate conviction used for enhancement purposes, I dissent.

[¶42.]     SEVERSON, Justice, joins this dissent.